United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TONY DICKEY,<br><br>  Plaintiff,<br><br> v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>  Defendant. | Case No. 5:15-cv-04922-RMW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

In this putative consumer class action involving central processing units, defendant Advanced Micro Devices, Inc. ("AMD") moves to dismiss plaintiff Tony Dickey's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 27. For the reasons set forth below, the court GRANTS defendant's motion to dismiss with leave to amend.

**I. BACKGROUND**

This case involves the components of certain AMD central processing units ("CPUs") for personal computers. AMD, a Delaware corporation based in Sunnyvale, California, manufactures CPUs. Dkt. No. 1 (Compl.) ¶¶ 9, 16. Plaintiff's allegations involve the number of "cores" in AMD's "Bulldozer" line of CPUs. Plaintiff alleges that "a core is an independent processing unit, which, like early CPUs, performs one calculation at a time." *Id.* ¶ 2. CPU manufacturers sometimes place more than one core on one physical chip to improve performance. *Id.* As plaintiff

1
5:15-cv-04922-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
RS

describes the technology, each core in a multicore CPU is able to operate (e.g., perform calculations and execute instructions) independently from other cores. *Id.* According to plaintiff, an eight-core CPU should be able to perform eight calculations simultaneously and independently. *Id.*

Plaintiff is a resident of Alabama. Compl. ¶ 8. Plaintiff alleges that he visited AMD's website at AMD.com on March 10, 2015. Compl. ¶ 42. Plaintiff allegedly saw materials on AMD's website indicating that AMD's FX-9590 Bulldozer chip was "the first native 8-core desktop processor" and "had '8-cores.'" *Id.* Plaintiff alleges that he then navigated to www.NewEgg.com, the website of an online retailer, and purchased two FX-9590 Bulldozer processors from Newegg.com for $299.99. *Id.* ¶ 44. Plaintiff alleges that the Newegg.com website also contained representations created by AMD indicating that the FX-9590 Bulldozer was the "first native 8-core desktop processor" and "the industry's first and only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.* ¶ 43. Plaintiff further alleges that the packaging materials for the FX-9590 processors he received indicated that the CPU was an "8-core" processor. *Id.* ¶ 44.

Plaintiff alleges that AMD's representations regarding the number of cores on each Bulldozer chip were false. *Id.* ¶ 5. In fact, according to the complaint, the Bulldozer chips functionally have only four cores—not eight, as advertised—because "AMD built the Bulldozer processors by stripping away components from two cores and combining what was left to make a single 'module.'" *Id.* As a result, plaintiff alleges, the cores no longer work independently. *Id.* For example, plaintiff alleges, two of AMD's Bulldozer "module processing units" share a single floating point unit, or FPU. *Id.* ¶ 33. According to plaintiff "[i]f one module processing unit performs a floating point calculation, the other must wait until that resource is free for its own floating point calculation, creating a bottleneck."[1] *Id.* Plaintiff alleges that the L2 cache[2] and other

---

[1] While the complaint does not explicitly describe how the Bulldozer CPUs perform integer calculations, Figure 11 in the complaint appears to show two sets of integer processing components sharing a single floating point unit. *See* Compl. ¶ 33.
[2] According to the complaint, an L2 cache is a bank of computer memory that serves as a

2

components are also shared between AMD module processing units. Plaintiff alleges that when he used the FX-9590 processors that he purchased, the CPUs "did not perform as well as a CPU with the same clock speed but with eight true cores." *Id.* ¶ 45.

Plaintiff commenced this lawsuit on October 26, 2015. Dkt. No. 1. Plaintiff's complaint asserts the following causes of action:

> 1. Violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.;
>
> 2. Violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.;
>
> 3. Violations of California's False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500, et seq.;
>
> 4. Fraudulent Inducement;
>
> 5. Breach of Express Warranties;
>
> 6. Negligent Misrepresentation; and
>
> 7. Unjust Enrichment.

*Id.* Plaintiff seeks to represent a class of "[a]ll individuals in the United States that purchased any of the following AMD Bulldozer processors: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590." *Id.* ¶ 49.

AMD moved to dismiss the complaint on December 21, 2015. Dkt. No. 27. Plaintiff filed an opposition on January 26, 2016, Dkt. No. 30, and AMD filed a reply on February 12, 2016, Dkt. No. 38. The court held a hearing on the instant motion on April 1, 2016.

## II. ANALYSIS

### A. Judicial Notice

Defendant requests that the court take judicial notice of (1) AMD's Limited Warranty, Dkt. No. 28-2; (2) AMD's Terms of Use / Copyright, Dkt. No. 28-3; (3) certain online articles that were cited in plaintiff's complaint, Dkt. Nos. 28-4 – 28-6; and (4) certain public statements by third parties about AMD's Bulldozer architecture that were not cited in the complaint, Dkt. Nos.

---

repository for a processing unit. Compl. ¶ 32 n.20.

28-7 – 28-9. In addition to plaintiff's opposition brief, Dkt. No. 30, plaintiff filed a brief in opposition to defendant's request for judicial notice. Dkt. No. 31. Plaintiff responded with a reply in support of the request for judicial notice, Dkt. No. 39, to which plaintiff attached another version of AMD's Limited Warranty. Dkt. No. 39-2. The court warns that the parties should not use judicial notice papers to make arguments that should have been made within the parties' opening, opposition, or reply briefs, for which the Civil Local Rules of this District set particular page limits. *See* Civ. L.R. 7-2(b), 7-3(a), 7-4(b). In this particular instance, the court will overlook the parties' procedural oversights, but the court may not do so in the future.

In ruling on a motion to dismiss, "courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citation omitted). Plaintiff does not object to the court's consideration of AMD's Terms of Use document or those articles that are referenced in the complaint (items 2 and 3 above), Dkt. No. 31 at 1, and so the court takes judicial notice of these documents. The court declines to take judicial notice of AMD's Limited Warranty (item 1 above) at this time at least because defendant did not submit the version of the warranty that defendant asserts is applicable to plaintiff's purchases until defendant filed its reply brief. *See* Dkt. Nos. 39-1, 39-2. It also does not appear that the complaint alleges the contents of AMD's limited warranty, as opposed to AMD's marketing materials. Finally, because this order's analysis does not rely on the third party articles that are not cited in the complaint (item 4 above), defendant's request that the court take judicial notice of these materials is denied as moot.

**B.  Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need

4
5:15-cv-04922-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
RS

not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

Defendant moves to dismiss on several grounds. Defendant argues that (1) Alabama law, not California law, governs plaintiff's claims, and so the UCL, FAL, and CRLA claims should be dismissed; (2) even under California law, plaintiff fails to state a claim for fraud; (3) the breach of warranty allegations fail to state a claim; and (4) plaintiff's unjust enrichment allegations fail to state a claim. Dkt. No. 27 at 2-3. The court addresses each of these arguments below.

### C.     Fraud-Based Claims

Assuming that California law applies to plaintiff's claims, defendant argues that plaintiff's CLRA, UCL, FAL, fraudulent inducement, and negligent misrepresentation causes of action must be dismissed due to plaintiff's failure to plead key elements of fraud. Dkt. No. 27 at 13. The Ninth Circuit has held that "where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Plaintiff's claims sound in fraud, and are thus subject to Rule 9(b)'s pleading requirements. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) ("Plaintiff's claims under the UCL, FAL, CLRA, and for Negligent Misrepresentation . . . sound in fraud, and are subject to the heightened pleading requirements of Rule 9(b).") (citing *Kearns v. Ford Motor Co.*, 567 F.3d

5

1120, 1127 (9th Cir. 2009)).

"[I]n order to be deceived, members of the public must have had an expectation or an assumption about the matter in question." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (citation omitted). Under California law, "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009)

Plaintiff's complaint cites non-technical AMD written materials to support plaintiff's argument that AMD made misleading statements on what constitutes a "core." For example, plaintiff alleges that in an investor filing, AMD stated:

> "… semiconductor companies are designing and developing multi-core [CPUs], where multiple processor cores are placed on a single die or in a single processor. Multi-core [CPUs] offer enhanced overall system performance and efficiency because computing tasks can be spread across two or more processing cores, each of which can execute a task [i.e., a calculation] at full speed."

Compl. ¶ 19 (citing a 2014 AMD form 10-K, Compl. Ex. A). The complaint also alleges that in 2010, AMD stated that its CPUs are offered "[w]ith the power of four processor cores on a single chip, [and] deliver[] industry-leading multitasking performance."[3] By contrast, plaintiff alleges, at least one AMD technical presentation acknowledges that AMD's modules have "additional sharing" when compared to existing cores and that "modules," rather than the module processing units that make up modules, have "everything necessary to schedule a code on these processors." *Id.* ¶ 36 (citing AMD, "Bulldozer" Processor Topology, May 28, 2013, www.youtube.com/watch?v=4EAuVsXWQ0s). The complaint also cites technical publications by third parties that allegedly distinguish between AMD's module processing units and cores. For example, a page on the Tom's Hardware Guide website stated that "the Bulldozer module doesn't

---

[3] *Id.* ¶ 21 (citing AMD Processors for Business, www.amd.com/en-us/innovations/softwaretechnologies/processors-for-business; Multi-Core Processing with AMD, http://www.amd.com/en-us/innovations/software-technologies/processors-for-business/multicore).

incorporate two complete cores."[4]

Defendant argues that plaintiff fails to plead specific facts to show the basis for his expectations about "cores." Dkt. No. 27 at 13. First, defendant argues that plaintiff does not allege that he personally saw or relied on any statements by AMD indicating that a core is an independent processing unit without any shared resources. *Id.* at 5. Nor does plaintiff allege that he personally believed that the cores on Bulldozer chips would not share resources when he bought them. *Id.* Plaintiff responds by arguing that the complaint specifically alleges that plaintiff saw AMD's advertising about the number of cores in its Bulldozer chips and that he relied on that advertising in making his purchase. Dkt. No. 30 at 21-22 (citing Compl. ¶¶ 42-46). The problem with plaintiff's argument is that while plaintiff alleges that he relied on AMD's representations about the *number* of cores on a chip, the complaint does not allege that plaintiff believed that a core could not share resources or that plaintiff even had a particular understanding of what *constitutes* a "core." Accordingly, the court finds that plaintiff's allegations regarding reliance are insufficient to state a claim for fraud.

Second, defendant argues, none of the statements by AMD that plaintiff cites asserts that a "core" must be an "independent processing unit" without any shared resources. Dkt. No. 27 at 5. Defendant points out that one of the industry articles cited in the complaint actually suggests that AMD's use of the term "core" was appropriate. *See* Compl. ¶ 34 n. 23 (citing http://www.tomshardware.com/reviews/fx-8150-zambezi-bulldozer-990fx,3043-3.html) ("To best accommodate its Bulldozer module, the company is saying that anything with its own integer execution pipelines qualifies as a core (no surprise there, right?), if only because most processor workloads emphasize integer math. I don't personally have any problem with that definition."). The court agrees with defendant that the alleged statements by AMD cited in the complaint do not suggest that AMD told consumers that a core had to be completely independent from other cores and could not share any resources. While an alleged statement by AMD's competitor Intel cited in

---

[4] *Id.* ¶ 34 (citing Per-Core Performance - AMD Bulldozer Review: FX-8150 Gets Tested, www.tomshardware.com/reviews/fx-8150-zambezi-bulldozer-990fx,3043-3.html)

1 the complaint refers to "independent central processing units in a single computing environment," the complaint does not describe any statements by AMD that suggest complete independence of cores. *See* Compl. ¶¶ 19-21.

Third, defendant points out that plaintiff does not plead specific details about how the definition of the term "core" allegedly impacted his computer's performance. Dkt. No. 27 at 6. However, defendant cites no authority requiring this level of specificity at the motion to dismiss stage, and the court finds plaintiff's allegations regarding decreased performance to be adequate.

For the reasons stated above, the claims under plaintiff's first, second, third, fourth, and sixth causes of action are dismissed with leave to amend.

### D. Applicable Consumer Protection Law

Defendant also argues that plaintiff, an Alabama resident, cannot assert claims under California's consumer protection statutes. The court need not reach the issue of whether another state's consumer protection laws apply at this time because the court finds that plaintiff's consumer protection claims are subject to dismissal even under the assumption that California law applies. Because plaintiff will be allowed to amend his complaint, however, the court provides the analysis below so that plaintiff can address the issues that the court has identified.

Plaintiff relies on a document on AMD's website entitled "Terms of Use / Copyright" to argue that California law should apply to plaintiff's claims. Compl. ¶ 14, Ex. B; Dkt. No. 28-3. Relevant portions of the Terms of Use / Copyright are reproduced below:

> The materials on this website (the "Site") are provided by Advanced Micro Devices, Inc., and its subsidiaries ("AMD") as a service for its customers and may be used for personal and / or informational purposes only. When you access, browse or use this Site you accept, without limitation or qualification, the terms and conditions set forth below and any additional terms and conditions of use set forth in any subsite. IF YOU DO NOT AGREE TO THEM, DO NOT USE THIS SITE OR DOWNLOAD MATERIALS FROM IT.
>
> * * *
>
> Terms for Use of this Site and Its Contents
>
> This Site is only for your personal use. You may not distribute, exchange, modify, sell or transmit any materials you copy from this

8
5:15-cv-04922-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
RS

United States District Court
Northern District of California

> Site, including but not limited to any software, text, images, audio and video ("Materials"), for any business, commercial or public purpose. All Materials on this Site are copyrighted and are protected by worldwide copyright laws and treaty provisions. Any unauthorized use of the Materials may violate copyright laws, trademark laws, the laws of privacy and publicity, and civil and criminal statutes.
>
> * * *
>
> Any claim relating to the Materials shall be governed by the internal substantive laws of the State of California, United States of America. Any cause of action you may have with respect to your use of this Site must be commenced within (1) year after the claim or cause of action arises.

Compl. Ex. B; Dkt. No. 28-3.

Plaintiff's reliance on the choice of law provision contained in the Terms of Use / Copyright seems misplaced because the Terms of Use / Copyright is directed at the use of AMD's website, and plaintiff's claims relate to CPUs that were not purchased from AMD's website.[5] Other district courts have declined to enforce choice of law provisions found on manufacturers' websites when consumers did not use the manufacturers' websites to purchase the products at issue. For example, in *Frenzel v. AliphCom*, the court found that California law did not apply to the claims of a Missouri resident who purchased an AliphCom Jawbone headset from a third party retailer. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009-1010 (N.D. Cal. 2014). The plaintiff had argued that California law should apply because the terms of use on the defendant's website stated: "These Terms of Use and any action related thereto will be governed, controlled, interpreted, and defined by and under the laws of the State of California." *Id.* at 1009. The court rejected the plaintiff's argument and instead found that "the word 'use' in 'terms of use' refers to the use of Jawbone's website, while 'the purchase of any product or service through the [website] is governed by the terms of sale,' not the terms of use." *Id.*

A different district court similarly rejected an argument by the purchaser of a television in *Nikolin v. Samsung*:

---

[5] Indeed, according to defendant, AMD does not even sell its Bulldozer CPUs directly to consumers. Dkt. No. 38 at 3.

> Plaintiff also relies on the "Terms of Use" page found on Samsung's website to argue that New Jersey law applies to her claims. . . . [T]he Court does not see how they support Plaintiff's argument. By its express language, the "Terms of Use" "govern [the website visitor] while on this site," and in a subsection titled "Violation of Terms of This Site," they state that New Jersey law governs "[a]ny action related to these Terms." . . . Plaintiff has not alleged that either she or Samsung violated the terms of Samsung's website, and Plaintiff has not alleged that her claims arise under the website's terms. Accordingly, the Court rejects Plaintiff's argument, presented for the first time in opposing Samsung's motion to dismiss, that the forum selection and choice-of-law clause of the "Terms of Use" applies to her claims.

*Nikolin v. Samsung Elecs. Am., Inc.*, No. CIV.A. 10-1456, 2010 WL 4116997, at *4 n.3 (D.N.J. Oct. 18, 2010) (citation omitted). *See also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp.2d 942, 964–65 (S.D. Cal. 2012) (rejecting argument that plaintiffs' CLRA, UCL, and FAL claims were governed by the choice of law provision in defendants' terms of service, where "[b]y its own terms, . . . the provision dictates only that California law applies to the construction and interpretation of the contract, and thus the provision does not apply to plaintiffs' non-contractual claims asserted under California's consumer protection statutes").

Plaintiff attempts to distinguish these cases by arguing that AMD's choice of law provision governs not only claims arising under AMD's Terms of Use / Copyright, but also any claims "relating to" the materials on AMD's website. Dkt. No. 30 at 8-10. Plaintiff notes that in *Miller v. Fuhu Inc.*, No. 14-cv-06119, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015), the district court applied a choice of law provision from a manufacturer's website despite the fact that the plaintiff had purchased the manufacturer's product from a third party retailer. This court finds plaintiff's analysis of *Miller* unpersuasive because the choice of law provision in *Miller* stated: "By visiting a Fuhu Property, you agree that ***all matters relating to*** your access to or use of the Site, ***products or services sold or distributed by or through Fuhu***, including all disputes, will be governed by the laws of the United States and by the laws of the State of California." *Id.* at *5 (emphasis added). The *Miller* court explicitly found that "[t]his language clearly states that the choice-of-law clause applies, not just to 'use of the Site,' but also to use of 'products or services' such as the Nabi

tablets, sold or distributed by Fuhu."[6] *Id.* at *6. In contrast, AMD's Terms of Use / Copyright contains no language to suggest that AMD's choice of law provision covers claims arising out of the purchase or use of AMD's products.[7]

Plaintiff argues that the language in AMD's choice of law provision—any claim "relating to" the Materials on the website—is broader than the language rejected in *Frenzel*, *Nikolin*, or *Sony*. Even if this court were to conclude that the "related to" language in AMD's Terms of Use / Copyright is broad enough to encompass allegedly false statements on AMD's website, AMD's Terms of Use / Copyright only applies to people who used AMD's website. *See Compl.* Ex. B; Dkt. No. 28-3 ("When you access, browse or use this Site you accept, without limitation or qualification, the terms and conditions set forth below."). The problem is that, notwithstanding the fact that plaintiff allegedly viewed AMD's website before purchasing AMD CPUs, plaintiff's claims seem to relate not necessarily to materials on AMD's website but to alleged misrepresentations that can also be found on third party websites and AMD's product packaging. *See* Compl. ¶¶ 28-29, 44, Exs. D, E, F. Plaintiff's proposed class definition does not distinguish between purchasers who viewed AMD's website before purchasing AMD products and those who did not. *See* Compl. ¶ 49. As defendant argues, if this court were to accept plaintiff's interpretation of AMD's Terms of Use / Copyright, the law governing a particular consumer's claims could not be identified without determining if that customer visited AMD's website and reviewed the statements at issue before making a purchase.

Because plaintiff now has the opportunity to amend his complaint, plaintiff should address the inconsistency between plaintiff's reliance on the choice of law provision in AMD's Terms of Use / Copyright and plaintiff's proposed class definition.

---

[6] The *Miller* court also noted that neither party in that case disputed that all users of Fuhu's Nabi tablets were subject to Fuhu's Terms of Use because the tablets could not be used without accepting Fuhu's terms. *Id.* In the instant case, plaintiff has not alleged that all AMD customers even view AMD's Terms of Use / Copyright.
[7] Plaintiff's citations to *Simpson v. FWM Labs., Inc.*, No. 09-cv-61771, 2010 WL 1257714 (S.D. Fla. Mar. 29, 2010) and *Khoday v. Symantec Corp.*, No. 11-cv-180, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) are similarly unpersuasive because both of those cases involved products purchased directly from the defendants' websites.

11

### E. Express Warranty Claim

"In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). Plaintiff claims that AMD's marketing and packaging materials stating the number of cores on Bulldozer processors created an express warranty under California law that the CPUs would contain the number of cores so stated. *See* Compl. ¶¶ 110-112.

Defendant moves to dismiss plaintiff's warranty claims on three grounds, one of which the court finds persuasive. First, AMD argues that plaintiff's express warranty claim depends on a technical interpretation of the term "core" that plaintiff does not allege that he personally had. Dkt. No. 27 at 3 n.3. In other words, defendant argues, plaintiff's breach of warranty claim is a fraud claim in disguise, and it should fail for the same reasons that plaintiff's fraud-based claims fail. Plaintiff's opposition brief does not directly refute this argument. The court finds that plaintiff has not adequately alleged a breach of an express warranty because he has not adequately alleged what his understanding of a "core" was.

Defendant also argues that AMD's marketing materials cannot create an express warranty because AMD's actual Limited Warranty[8] "replace[s] all other warranties, express or implied" and "AMD makes no express warranties beyond those stated here." Dkt. No. 27 at 15. Plaintiff responds that AMD's Limited Warranty, which was not referenced in the complaint, is not properly subject to judicial notice, Dkt. No. 30 at 22 n.16, and that even if taking judicial notice were proper, disclaimers of express warranties are generally void under California law, *id.* at 23-24. As noted above, the court finds that AMD's Limited Warranty is not properly subject to judicial notice at the dismissal stage. Accordingly, the court declines to consider the document until AMD files an answer or another responsive pleading.

Defendant also argues that plaintiff has failed to give AMD pre-suit notice of a breach of

---

[8] AMD's limited warranty is attached to defendant's reply in support of its request for judicial notice. Dkt. No. 39-2.

12
5:15-cv-04922-RMW
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
RS

1   warranty as required by California law. Dkt. No. 27 at 15. "To avoid dismissal of a breach of

2   contract or breach of warranty claim in California, [a] buyer must plead that notice of the alleged

3   breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez

4   v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (citation omitted); Cal. Com. Code

5   § 2607(3)(A). Plaintiff argues that notice is not required when an injured customer did not deal

6   directly with the manufacturer whose warranty may apply. Dkt. No. 30 at 24; *see Minkler v.

7   Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) (noting that "timely notice of a breach of an

8   express warranty is not required where the action is brought by 'injured consumers against

9   manufacturers with whom they have not dealt'") (citing *Greenman v. Yuba Power Products, Inc.*,

10  59 Cal. 2d 57, 61 (1963)). Defendant responds that the *Greenman* notice exception only applies in

11  personal injury cases, but defendant cites no authority in support of this argument. Accordingly,

12  the court does not rely on lack of notice in dismissing plaintiff's breach of warranty claim.

    Nevertheless, because plaintiff has not alleged sufficient facts regarding his understanding

    of the term "core," his claim for breach of warranty is dismissed with leave to amend.

### F.  Unjust Enrichment

Finally, defendant moves to dismiss plaintiff's unjust enrichment claim on the ground that unjust enrichment is not an independent cause of action in California. Dkt. No. 27 at 16. The Ninth Circuit recently held that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, the *Astiana* Court further held that "when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (citation omitted). AMD argues that even if unjust enrichment were a valid claim, it is not available if the plaintiff alleges that a valid express contract covering the same subject matter exists between the parties. Dkt. No. 27 at 25 (citing *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004)). Moreover, AMD argues, a contract claim is necessary for plaintiff's warranty claims. Plaintiff responds that he may properly plead unjust enrichment and breach of warranty in the alternative. Dkt. No. 30 at 25 (citing *Blennis v. Hewlett-Packard*

*Co.*, No. C 07-00333 JF, 2008 WL 818526, at *4 (N.D. Cal. Mar. 25, 2008)). In this case, the court finds that plaintiff's "unjust enrichment theory rests on allegations covered by other claims that provide for legal remedies." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-CV-04769-RS, 2015 WL 7709655, at *8 (N.D. Cal. Apr. 13, 2015). Plaintiff's unjust enrichment claim is superfluous, and, accordingly, dismissed.

### III. ORDER

For the foregoing reasons, the court GRANTS defendant's motion to dismiss with leave to amend. Within 14 days, plaintiff shall submit an amended complaint that corrects the deficiencies identified in this order. Furthermore, a case management conference will be held on May 13, 2016 at 10:30 a.m. The parties shall submit a joint case management statement by May 6, 2013.

**IT IS SO ORDERED.**

Dated: April 7, 2016

_____
Ronald M. Whyte
United States District Judge