Rafey S. Balabanian*
rbalabanian@edelson.com
Todd M. Logan (SBN – 305912)
tlogan@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Benjamin S. Thomassen*
bthomassen@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

* Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Putative Classes*

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
E. CLAY MARQUEZ (S.B. #268424)
cmarquez@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

KELSEY M. LARSON (S.B. #267982)
klarson@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA  90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendant
ADVANCED MICRO DEVICES, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TONY DICKEY, and PAUL PARMER, individually and on behalf of all others similarly situated,<br><br>               *Plaintiffs,*<br><br>        *v.*<br><br>ADVANCED MICRO DEVICES, INC., a Delaware corporation,<br><br>               *Defendant.* | Case No.  5:15-cv-04922-RMW<br><br>**JOINT SUBSEQUENT CASE MANAGEMENT STATEMENT**<br><br>Am. Complaint Filed:    May 5, 2016<br>Trial Date: None set |

Pursuant to Fed. R. Civ. P. 26, Local Rule 16–9 and the Standing Order for all Judges of the Northern District of California, Plaintiffs Tony Dickey and Paul Parmer (the "Plaintiffs") and Defendant Advanced Micro Devices, Inc. ("AMD") (together, the "Parties"), hereby jointly submit the following Case Management Statement.

## I.   JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because Plaintiffs allege that (a) at least one member of the putative classes is a citizen of a state different from Defendant, (b) the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

No issues exist with respect to personal jurisdiction or venue, and Defendant has been served.

## II.   FACTS

**A.       Plaintiffs' Position:** AMD develops, manufactures, markets and sells (or causes to be sold) its "Bulldozer" line of central processing units ("CPUs") to consumers. Nearly all of AMD's representations made with respect to the Bulldozer CPUs emphasize that, according to AMD, each CPU features "8 cores." This includes marketing copy for the CPUs ("Take your PC's megatasking abilities to extreme levels with the first native **8-core** desktop [CPU]"), product descriptions ("**Cores: 8**"), and even product titles ("AMD FX **8-Core** Black Edition FX-9590"). AMD stressed this purported feature of its CPUs to sell more products and close the gap with Intel Corporation, its main competitor in the consumer CPU market. Both AMD and Intel—along with the rest of the industry—consistently use the term "cores" to describe fully independent central processing units (i.e., ones capable of functioning independently from other "cores" and, thus, engaging in true multitasking). Each Plaintiff shared this common understanding of the term, as used within the PC enthusiast industry. Despite its consistent message, however, AMD's Bulldozer CPUs do not have 8 cores. Instead, AMD's Bulldozer CPUs contain eight sub-processors (i.e., rather than 8 independent or complete cores), each of which shares certain resources with other sub-processors on the larger component. Practically speaking, this sharing means that the 8 cores in each Bulldozer CPU *cannot* operate independently, *cannot* engage in true multitasking in the way that an actual, independent core could, and as a result the Bulldozer CPUs *cannot* perform to the level of a true 8-core CPU.

This performance limitation is true both by design and by documented performance testing. Accordingly, every consumer—including Plaintiffs—that purchased a Bulldozer CPU received a product necessarily inferior to what AMD advertised.

**B.    Defendant's Position:**  The essence of Plaintiffs' claim is that the cores on AMD's FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370 and FX-9590 processors (the "Products" or "AMD's Products") are not "true" cores because of technical differences between the Bulldozer architecture and other processor architectures.  However, the fact that the Bulldozer architecture is different from that of other processor architectures is wholly unsurprising—every new processor design is different than predecessor designs.  And the Bulldozer architecture was publicly and accurately described by AMD in many publications that are readily accessible, including in many of the same articles and reviews that Plaintiffs cite in their Amended Complaint.  Moreover, Plaintiffs' assertion that these architectural differences are such that AMD's Products cannot engage in "true multitasking the way an actual, independent core could" is simply wrong: an eight-core processor utilizing Bulldozer architecture can indeed execute eight instructions simultaneously.

## III.    LEGAL ISSUES

The legal issues in this case include, but are not limited to: (a) whether AMD's marketing and sale of certain Bulldozer-based CPU's advertised as having "eight cores" violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; or the Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, or otherwise constituted fraudulent inducement, negligent misrepresentation or breach of express warranty; (b) whether the proposed action can be maintained as a class action under Rule 23; and (c) whether California or Alabama substantive law applies to Plaintiff Dickey's claims.

## IV.    MOTIONS

On October 27, 2015, Plaintiff Dickey filed a motion for class certification, but only requested that the Court enter and reserve ruling on the issue of class certification (i.e., so as to first allow discovery to take place on class issues). (Dkt. 6.)  Plaintiffs reserve all rights to amend and supplement that motion.

On December 21, 2015, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6). (Dkt.

1   27.) Plaintiff Dickey filed his opposition to that motion on January 26, 2016, (Dkt. 30), and

2   Defendant filed its reply in support of its motion on February 12, 2016, (Dkt. 38). On April 7, 2016,

3   the Court dismissed Plaintiff Dickey's Complaint without prejudice. (Dkt. 46.)

4         On February 25, 2016, the parties filed a joint motion for a protective order to appropriately

5   protect confidential, proprietary, or private information from public disclosure. (Dkt. 41.)

6         Plaintiffs filed their First Amended Complaint on May 5, 2016. (Dkt. 50.) Defendant filed a

7   motion to dismiss the amended pleading pursuant to Rule 12(b)(6) on May 26, 2016. (Dkt. 52.)

8   Plaintiffs filed their opposition to that motion on June 16, 2016, (Dkt. 57), and Defendant filed its

9   reply in support of the motion on June 30, 2016, (Dkt. 59).

10         The Parties anticipate filing the following motions in this action: (i) Plaintiffs' amended

11   motion for class certification; (ii) cross-motions for summary judgment; and (iii) discovery-related

12   motions, if necessary.

13   **V.   AMENDMENT OF PLEADINGS**

14         The parties propose that the deadline to join additional parties or amend the pleadings be set

15   for 90 days from the date of this filing, in accordance with the proposed schedule of discovery and

16   general case deadlines set forth in Section XVII below.  At this time, Plaintiffs do not anticipate that

17   any additional amendments of the pleadings will be necessary, but reserve their rights to seek leave

18   to amend for cause in the future on any available basis.  Defendant reserves its rights to oppose any

19   such proposed amendments on any available basis.

20   **VI.   EVIDENCE PRESERVATION**

21         The Parties have conferred with their respective counsel about the need to preserve evidence

22   that may be relevant to Plaintiffs' claims or Defendant's defenses, including the preservation of

23   Electronically Stored Information ("ESI").  Currently, both Parties are taking appropriate steps to

24   preserve materials they reasonably believe may be relevant in this litigation.

25   **VII.   DISCLOSURES**

26         The Parties have exchanged their respective Rule 26(a)(1) disclosures.

27   **VIII.   DISCOVERY**

28

**A.     Scope of Discovery:**  To date, the Parties have not engaged in discovery.  The Parties agree to conduct discovery under the guidelines set forth in the Federal Rules of Civil Procedure. The Parties anticipate that they will each require discovery in the form of depositions, interrogatories, requests for admission, and document requests (including potential discovery from third-parties).  The Parties, however, disagree on the timing and scope of discovery, as explained in more detail below.

1.     **Plaintiffs' Position:** Plaintiffs anticipate propounding discovery on the following non-exhaustive list of topics: (1) information related to the development, design, and manufacturing related to the Bulldozer CPUs; (2) information relating to the development, design, distribution, and use of advertisements for the Bulldozer CPUs (specifically including AMD's use and understanding of the term "core," as used in the Bulldozer CPU marketing and product descriptions); (3) information concerning sales of and/or revenue derived from the Bulldozer CPUs; and (4) information concerning AMD's relationship and communications with members of the putative classes. Plaintiffs believe class and merits discovery should proceed simultaneously, given that both parties recognize that there will be significant overlap between class and merits issues in this case. To that end, Plaintiffs disagree that either party could have a legitimate basis for objecting to discovery requests based solely on their timing (i.e., in relation to Plaintiffs' forthcoming motion for class certification). Plaintiffs intend to propound initial discovery requests following the July 22, 2016 case management conference and believe that no discovery stay is warranted (but are willing to discuss limiting Defendant's initial discovery responses—particularly with respect to its document production—while its motion to dismiss remains pending).

2.     **Defendant's Position:**  Discovery is premature until after the Court's ruling on Defendant's motion to dismiss, which is set for hearing on July 22, 2016.  Until the Court rules on that motion, it is unclear whether Plaintiffs' claims will proceed at all—and unless the Court denies Defendant's motion in its entirety, the Court's ruling will likely narrow or focus the claims and issues in this case in ways that will impact the Parties' discovery.

Once discovery commences, Defendant agrees that strict phasing or bifurcation of discovery is not appropriate as certain "merits" issues may be relevant to class certification. That said,

completing a significant portion of pre-trial discovery before class certification is resolved makes no sense.  Instead, Defendant believes the Parties should focus initial discovery on those topics and information necessary to determine whether this action can proceed on a class-wide basis, and then, if the case proceeds after class certification, to focus on remaining merits discovery—and the Parties should leave sufficient time after certification is resolved to complete that pre-trial discovery.  Defendant anticipates that it will seek discovery before class certification related to Plaintiffs' actions and claims, including, among other items, deposition and written discovery of the named Plaintiffs regarding their purchase and use of AMD's Products.  Defendant may also seek to conduct a physical examination of Plaintiffs' personal computer(s) and/or the AMD Products they purchased.  Defendant will also seek to depose Plaintiffs' experts regarding the bases for any opinions offered by Plaintiffs in support of his class certification motion.

While Defendant does not believe strict bifurcation is appropriate given the likelihood that both parties will want to include discussion of certain merits issues in support of or in opposition to class certification, Defendant is sensitive to the costs and burdens associated with broad ranging discovery at this stage, including discovery that is not necessary for the resolution of class certification.  Here, the scope of appropriate pre-certification discovery will depend on the costs and time needed to respond to that discovery, as well as the impact of that discovery (if any) on issues necessary to resolve class certification.  Accordingly, Defendant reserves the right to object to particular discovery requests on the grounds that the requests are improper or inappropriate in connection with, or prior to, the resolution of Plaintiffs' anticipated motion for class certification.

**B.     Form of Electronic Discovery and Claims of Privilege:**  The Parties have filed a joint motion for a protective order, which was entered on February 29, 2016. (Dkt. 42.)  The Parties have also agreed to consider crafting an appropriate stipulation (or stipulations), subject to the Court's approval, governing: (1) the identification of relevant and discoverable ESI; (2) the scope of discoverable ESI to be preserved and produced by the Parties; (3) the formats for preservation and production of ESI; (4) the protection of confidential and proprietary information; (5) the procedures for handling inadvertent production of privileged information and other privilege waiver issues under Rule 502 of the Federal Rules of Evidence; and (6) any other relevant ESI issues that may

1   arise in this case.

2   **IX.     CLASS ACTIONS**

3       **A.       Plaintiffs' Position:** Plaintiffs seek class certification pursuant to Fed. R. Civ. P.

4   23(b)(2) and Rule 23(b)(3) of two classes of similarly situated individuals and entities, defined as

5   follows: "**Nationwide Class**": All individuals in the United States that purchased an AMD Bulldozer

6   processor after viewing and relying upon the description provided on that processor's respective

7   AMD webpage, including: Model Nos. FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370,

8   and FX-9590; and "**California Class**": All California residents that purchased any of the following

9   AMD Bulldozer processors: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-

10  9590.

11      The proposed Classes satisfy each of the requisites to class certification under Rule 23. In

12  particular, the Classes each consist of likely thousands of individuals, making joinder of all members

13  impracticable (numerosity). There are many questions of law and fact common to Plaintiffs' claims

14  and those of the other members of the Classes, which predominate over any questions that may

15  affect only individual Class members (commonality and predominance). To those ends, AMD's

16  many representations that the Bulldozer CPUs had "8 cores" (i) emanated from California, (ii) were

17  featured across websites marketing or describing the Bulldozer processors (including on

18  www.amd.com), (iii) were featured on the Bulldozer CPU product packaging and other physical

19  advertising, and (iv) were all objectively false. Under such facts, questions of individual reliance are

20  no barrier to certification, and resolution of whether Defendant's uniform conduct was material and

21  misleading will be resolved on an objective basis—making this case eminently suitable for class-

22  wide adjudication. This case is additionally amenable to class treatment on a nationwide basis

23  because AMD uniformly referred all purchasers to its website (e.g., for more information on the

24  Bulldozer CPUs) and, there, selected that California substantive law would govern any and all

25  claims relating to the representations that AMD made about its products. Further, Plaintiffs' claims

26  are also typical of the claims of all of the other members of the Classes, inasmuch as Plaintiffs and

27  the Classes all sustained damages as a result of Defendant's uniform wrongful dissemination of false

28  advertisements and misleading marketing materials / product descriptions (typicality). Plaintiffs also

1  will fairly and adequately represent and protect the interests of the other members of the Classes, and

2  have retained counsel competent and experienced in complex class actions involving issues of

3  nation-wide consumer fraud (adequacy of representation).

4       Similarly, class proceedings are superior to all other available methods for the fair and

5  efficient adjudication of this controversy. That is, the damages suffered by individual Class members

6  will be relatively small (i.e., given that the at-issue CPUs cost approximately $150 - $300 each)

7  compared to the burden and expense of individual prosecution of the complex litigation necessitated

8  by Defendant's conduct. Even if members of the Classes could sustain individual litigation, it would

9  still not be preferable to a class action, because individual litigation would increase the delay and

10  expense to all parties, as well as the likelihood of the imposition of inconsistent obligations.

11  Moreover, Defendant has acted or refused to act on grounds generally applicable to the Classes,

12  thereby making appropriate final restitutionary and other equitable relief with respect to the Classes

13  as a whole.

14       **B.     Defendant's Position:**  AMD intends to oppose Plaintiffs' motion for class

15  certification, and disagrees that the proposed Classes (or any class) could be certified in this case

16  under Rule 23.  Among other things, Plaintiffs have not and cannot demonstrate that their particular

17  understanding of the term "core" is shared by reasonable consumers, and several of Plaintiffs'

18  assertions about the multitasking capabilities of the Products are demonstrably false and lack

19  evidentiary support. The aspects of the Bulldozer architecture that Plaintiffs contend were

20  "misleading" were also widely known and were extensively discussed in the press (and by AMD

21  itself), including in reviews of AMD's Products.  Moreover, the capabilities of AMD's Products

22  were also openly discussed and available to consumers at all relevant times (including extensive

23  analyses comparing AMD's Products to other products on a wide variety of benchmarks).  In

24  addition, the substantive law that applies to each putative Class member's claim will depend on

25  (among other things) where they reside and made their purchases.  Accordingly, a class proceeding

26  is not a superior method to resolve this alleged controversy, the proposed Classes fail to meet the

27  requirements of Rule 23(a), Rule 23(b)(2) or (b)(3), and that Plaintiffs cannot establish materiality,

28  reliance, injury, or damages on a classwide basis.

## X.    RELATED CASES

The Parties are unaware of any related cases at this time.

## XI.    RELIEF SOUGHT

**A.    Plaintiffs' Position:** Through their Amended Complaint, Plaintiffs respectfully request that the Court enter an Order (or Orders): (i) certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Classes, and appointing their counsel as class counsel; (ii) declaring that Defendant's actions, as set out above, violate the CLRA (Cal. Civ. Code §§ 1750, *et seq.*), the UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*), and the FAL (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and constitute fraud in the inducement, breach of express warranties, and negligent misrepresentation; (iii) awarding damages, including statutory and punitive damages where applicable, to Plaintiffs and the Classes in an amount to be determined at trial; (iv) awarding restitutionary relief to Plaintiffs and the Classes in an amount to be determined at trial; (v) awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees; (vi) awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; (vii) awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and (viii) awarding such other and further relief as the Court deems reasonable and just.

**B.    Defendant's Position:** AMD denies that Plaintiffs or the other members of the proposed Classes are entitled to any of the above relief (or any relief whatsoever).

## XII.    SETTLEMENT AND ADR

The parties have met and conferred in compliance with ADR Local Rule 3-5. The parties are in the process of selecting and scheduling a mediation with a private mediator.

## XIII.    CONSENT TO MAGISTRATE JUDGE

The Parties do not consent to proceed before a Magistrate Judge at this time.

## XIV.    OTHER REFERENCES

At this time, the Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV.    NARROWING OF ISSUES

At this time, the Parties are not aware of any issues that can be narrowed by agreement or by motion, and do not presently request bifurcation of issues, claims, or defenses.

## XVI.   EXPEDITED SCHEDULE

The Parties do not believe that this case should be handled via the Court's Expedited Trial Procedure.

## XVII.   SCHEDULING

| EVENT | PROPOSED DEADLINE |
|---|---|
| *Deadline to file motions to join parties or amend pleadings* | September 27, 2016 |
| *Plaintiffs to serve disclosures pursuant to Fed. R. Civ. P. 26(a)(2) relating to class certification* | October 28, 2016 |
| *Defendant's deadline to depose Plaintiffs' experts and the Parties' other witnesses related to class certification* | December 5, 2016 |
| *Defendant to serve disclosures of rebuttal expert witnesses and reports relating to class certification* | December 15, 2016 |
| *Plaintiffs' deadline to depose rebuttal experts related to class certification* | January 20, 2017 |
| *Plaintiffs to file motion and memorandum in support of class certification* | March 17, 2017 |
| *Defendant to file opposition to class certification and all supporting materials* | April 28, 2017 |
| *Plaintiffs to file reply in support of motion for class certification* | May 26, 2017 |
| *Hearing on motion for class certification* | At the Court's convenience. |
| *Subsequent Case Management Conference (set date for trial)* | 10 days following the Court's ruling on Plaintiffs' motion for class certification |
| *Fact discovery cut-off* | Plaintiffs' Position: Sixty (60) days following the Subsequent Case Management Conference<br><br>Defendant's Position: One hundred twenty (120) days following the Subsequent Case Management Conference |
| *Plaintiffs to serve disclosures pursuant to Fed. R. Civ. P. 26(a)(2) related to merits issues* | Thirty (30) days prior to fact discovery cut-off |

9

| | |
|---|---|
| *Defendant to disclose rebuttal expert witnesses related to merits issues* | Forty-five (45) days following Plaintiffs' expert disclosures related to merits issues |
| *Defendant to depose Plaintiffs' experts related to merits issues* | Forty-five (45) days following Plaintiffs' expert disclosures related to merits issues |
| *Plaintiffs to depose Defendant's rebuttal expert witnesses related to merits issues* | Forty-five (45) days following Defendant's disclosures of rebuttal experts related to merits issues |
| *Expert discovery cut-off* | Forty-five (45) days following Defendant's disclosures of rebuttal experts related to merits issues |
| *File dispositive pretrial motions and Daubert motions* | Forty-five (45) days following the close of expert discovery |
| *File oppositions to dispositive pretrial motions and Daubert motions* | Thirty (30) days following filing of any dispositive pretrial motions or Daubert motions |
| *File reply briefs in support of dispositive pretrial motions and Daubert motions* | Fourteen (14) days following filing of any opposition to dispositive pretrial motions or Daubert motions |
| *Hearing on dispositive pretrial motions and Daubert motions* | At the Court's convenience |
| *Pretrial conference* | TBD |
| *Motion in limine hearing date* | TBD |
| *Trial to begin* | TBD |

## XVIII. TRIAL

Plaintiffs have requested a trial by jury of all matters that can be so tried. Plaintiffs anticipate that a trial in this matter will require approximately five Court days.

## XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

On November 24, 2015, Plaintiffs' counsel filed their certificate of interested entities or persons. (Dkt. 22.)  On December 1, 2015, Defendant filed its certificate of interested entities or persons. (Dkt. 24.)

## XX.   PROFESSIONAL CONDUCT

The attorneys of record have reviewed the applicable Guidelines for Professional Conduct.

## XXI.  OTHER MATTERS

At this time, the Parties are unaware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action.

1

Respectfully submitted,

2

Dated:  July 15, 2016

O'MELVENY & MYERS LLP

3

By:  /s/ Matthew D. Powers
MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:     (415) 984-8700
Facsimile: (415) 984-8701

4

5

6

7

Attorneys for Defendant
ADVANCED MICRO DEVICES, INC.

8

9

Dated:  July 15, 2016

EDELSON PC

10

By: /s/ Benjamin S. Thomassen
BENJAMIN S. THOMASSEN (admitted *pro hac vice*)
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:     (312) 589-6370
Facsimile: (312) 589-6378

11

12

13

14

Attorneys for Plaintiffs
TONY DICKEY and PAUL PARMER

15

16

17

**SIGNATURE ATTESTATION**

18

Pursuant to Civil Local Rule 5.1(i)(3), I hereby attest that concurrence has been obtained in

19

the filing of this document from each of the other signatories shown above.

20

Dated:  July 15, 2016

By:  /s/ Benjamin S. Thomassen

21

22

23

24

25

26

27

28

11