UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TONY DICKEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>    Defendant. | Case No. 15-cv-04922-RMW<br><br>**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 52 |

In this putative consumer class action involving central processing units, defendant Advanced Micro Devices, Inc. ("AMD") moves to dismiss plaintiffs Tony Dickey and Paul Parmer's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 52. For the reasons set forth below, the court GRANTS defendant's motion to dismiss with leave to amend, albeit not on every basis for which defendant has requested dismissal.

**I.  BACKGROUND**

This case involves the components of certain AMD central processing units ("CPUs") for personal computers. AMD, a Delaware corporation based in Sunnyvale, California, manufactures CPUs. Dkt. No. 50 ("FAC") ¶¶ 10, 17. Plaintiffs' allegations involve the number of "cores" in AMD's "Bulldozer" line of CPUs. Plaintiffs allege that a "core is an independent processing unit,

which, like early CPUs, performs one calculation at a time." *Id.* ¶ 2. CPU manufacturers sometimes place more than one core on one physical chip to improve performance. *Id.* As plaintiffs describe the technology, each core in a multicore CPU is able to operate (e.g., perform calculations and execute instructions) independently from other cores. *Id.* According to plaintiffs, an eight-core CPU should be able to perform eight calculations simultaneously and independently. *Id.*

Plaintiff Tony Dickey is a resident of Alabama. *Id.* ¶ 8. Dickey alleges that he visited AMD.com's product webpage for the FX-9590 Bulldozer chip on March 10, 2015. *Id.* ¶ 47. Dickey allegedly saw materials on AMD's website indicating that AMD's FX-9590 Bulldozer chip was "the first native 8-core desktop processor" and "had '8-cores.'" *Id.* Dickey allegedly then navigated to www.NewEgg.com, the website of an online retailer, and purchased two FX-9590 Bulldozer processors from Newegg.com for $299.99. *Id.* ¶¶ 48-49. Plaintiffs allege that the Newegg.com website also contained representations created by AMD indicating that the FX-9590 Bulldozer was the "first native 8-core desktop processor" and "the industry's first and only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.* ¶ 48. Plaintiffs further allege that the packaging materials for the FX-9590 processors Dickey received indicated that the CPU was an "8-core" processor. *Id.* ¶ 49.

Plaintiff Paul Parmer is a resident of California. *Id.* ¶ 9. Parmer alleges that on or around June 2015, Parmer purchased an FX 8350 Black Edition 8-Core Bulldozer processor for $189.99 from Amazon.com. *Id.* ¶ 54. Parmer alleges that before he purchased the product, he recognized the product name indicated it had "8-Cores." *Id.* In addition, before deciding to make his purchase, Parmer allegedly visited the FX 8350 AMD product webpage and saw materials indicating that the FX-8350 Black Edition 8-Core Bulldozer chip was the "first native 8-core desktop processor" and "the industry's first and only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.*

Plaintiffs allege that Dickey and Parmer purchased the FX-9590 processor and the

2

15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

FX-8350 processor, respectively, "specifically because it was advertised as having 8-cores." *Id.* ¶¶ 51, 55. Dickey and Parmer allege that they both "reasonably expected, based on the industry-standard definition of a core and the representations [they] viewed on AMD.com, that each of the 8 cores in the FX-9590 [or FX-8350] was independent from each other." *Id.* The FAC further alleges that Dickey and Parmer reasonably expected that the processors they purchased had two more cores than competitor Intel's competing 6-core processors. *Id.* ¶¶ 51, 57. Plaintiffs allege that AMD's representations about the processors' core counts were material to plaintiffs' purchases, and, without them, plaintiffs either would not have purchased the processors or would have paid less for them. *Id.*

Plaintiffs allege that AMD's representations regarding the number of cores on each Bulldozer chip were false. *Id.* ¶ 5. In fact, according to the complaint, the Bulldozer chips functionally have only four cores—not eight, as advertised—because "AMD built the Bulldozer processors by stripping away components from two cores and combining what was left to make a single 'module.'" *Id.* As a result, plaintiffs allege, the cores no longer work independently, cannot perform eight instructions simultaneously, and suffer material performance degradation. *Id.* For example, plaintiffs allege, two of AMD's Bulldozer "module processing units" share a single floating point unit, or FPU. *Id.* ¶ 36. According to plaintiffs "[i]f one module processing unit performs a floating point calculation, the other must wait until that resource is free for its own floating point calculation, creating a bottleneck." *Id.* Plaintiffs allege that the L2 cache[1] and other components are also shared between AMD module processing units. *Id.* Plaintiffs allege that when they used the FX-9590 and FX-8350 processors that they purchased, the CPUs "did not perform as well as a CPU with the same clock speed but with eight true cores." *Id.* ¶ 50, 56.

This lawsuit was commenced on October 26, 2015, with Dickey as the sole named plaintiff. Dkt. No. 1. The court granted AMD's motion to dismiss the original complaint with

---

[1] According to the complaint, an L2 cache is a bank of computer memory that serves as a repository for a processing unit. FAC ¶ 35 n.20.

3
15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

leave to amend on April 7, 2016, dismissing Dickey's fraud-based claims as well as an express warranty claim because Dickey did not adequately allege that he had a particular understanding of what constitutes a "core." Dkt. No. 46. Plaintiffs filed their first amended complaint, adding Parmer as the second named plaintiff, on May 5, 2016. Dkt. No. 50. The first amended complaint asserts the following causes of action:

> 1. Violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.;
>
> 2. Violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.;
>
> 3. Violations of California's False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500, et seq.;
>
> 4. Fraudulent Inducement;
>
> 5. Breach of Express Warranties; and
>
> 6. Negligent Misrepresentation.

*Id.* Plaintiffs Dickey and Parmer seek to represent a nationwide class of "[a]ll individuals in the United States that purchased an AMD Bulldozer processor after viewing and relying upon the description provided on that processor's respective AMD webpage," including the following AMD Bulldozer processors: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590. *Id.* ¶ 60. Plaintiff Parmer seeks to represent a California statewide class of "[a]ll California residents that purchased any of the following AMD Bulldozer processors: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590." *Id.* ¶ 61.

AMD moved to dismiss the first amended complaint on May 26, 2016. Dkt. No. 52. Plaintiff filed an opposition on June 16, 2016, Dkt. No. 57, and AMD filed a reply on June 30, 2016, Dkt. No. 59. The court held a hearing on August 5, 2016.

## II. ANALYSIS

### A. Judicial Notice

Defendant requests that the court take judicial notice of several online articles. Dkt. No. 53. The documents for which defendant requests judicial notice are:

4

15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

1. "AMD Bulldozer Review: FX-8150 Gets Tested" (October 11, 2011; tomshardware.com), Dkt. No. 53-3, Ex. 2;
2. "The Bulldozer Review: AMD FX-8150 Tested" (October 12, 2011; anandtech.com), Dkt. No. 53-4, Ex. 3;
3. "AMD Bulldozer (FX) CPU Review" (October 2011; hardwarereview.net), Dkt. No. 53-5, Ex. 4;
4. "AMD's FX-8150 'Bulldozer' Processor" (October 12, 2011; techreport.com), Dkt. No. 53-6, Ex. 5;
5. "AMD Reveals Details about Bulldozer Microprocessors" (August 24, 2010; xbitlabs.com), Dkt. No. 53-7, Ex. 6; and
6. "Multi-Core Processor" (May 25, 2016; Wikipedia.org), Dkt. No. 53-8, Ex. 7.

*Id.* The first two online articles listed above, (items 1 and 2 above) were cited in plaintiffs' complaint. The others (items 3 through 6) were not cited in plaintiffs' complaint but are public statements by third parties about AMD's Bulldozer architecture. *Id.* In addition to plaintiffs' opposition brief, Dkt. No. 57, plaintiffs filed a brief in opposition to defendant's request for judicial notice. Dkt. No. 58. Defendant filed a reply. Dkt. No. 60.

Generally, a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). A court, however, "may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada*, *N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citation omitted). In addition, under Federal Rule of Evidence 201, a court may take judicial notice of a fact when it is "not subject to reasonable dispute" because the fact either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citations omitted).

Plaintiff does not object to the court's consideration of those articles that are referenced in the complaint, Dkt. No. 58 at 1, and so the court takes judicial notice of these documents (items 1

5

15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

and 2 above). Plaintiff does, however, object to judicial notice of the articles not cited in the complaint. Dkt. No 58 at 1. Defendant argues that these articles are being submitted for fact of their publication, and not truth of their contents. Dkt. No. 53 at 3. Because this order's analysis does not rely on the third party articles that are not cited in the complaint (items 3 through 6 above), defendant's request that the court take judicial notice of these materials is denied as moot.

### B.  Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

Defendant moves to dismiss on several grounds. Defendant argues that (1) Alabama law applies to Dickey's claims, so Dickey's California claims should be dismissed; (2) plaintiffs fail to state a claim for fraud; (3) plaintiffs fail to state a claim for breach of warranty; and (4) plaintiffs lack standing to seek injunctive relief. Dkt. No. 52.

### C. Choice of Law

Defendant argues that plaintiff Dickey, an Alabama resident, cannot assert claims under California's consumer protection statutes. Dkt. No. 52 at 13. Defendant argues that the choice of law provision in AMD's website's "Terms of Use / Copyright" does not apply to plaintiff Dickey's claims and accordingly, Alabama law applies under the "government interest" test. *Id.*

Plaintiffs rely on a document on AMD's website entitled "Terms of Use / Copyright" to argue that California law should apply to Dickey's claims. FAC ¶ 15, Ex. B; Dkt. No. 50-2. Relevant portions of the Terms of Use / Copyright are reproduced below:

> The materials on this website (the "Site") are provided by Advanced Micro Devices, Inc., and its subsidiaries ("AMD") as a service for its customers and may be used for personal and / or informational purposes only. When you access, browse or use this Site you accept, without limitation or qualification, the terms and conditions set forth below and any additional terms and conditions of use set forth in any subsite. IF YOU DO NOT AGREE TO THEM, DO NOT USE THIS SITE OR DOWNLOAD MATERIALS FROM IT.
>
> * * *
>
> Terms for Use of this Site and Its Contents
>
> This Site is only for your personal use. You may not distribute, exchange, modify, sell or transmit any materials you copy from this Site, including but not limited to any software, text, images, audio and video ("Materials"), for any business, commercial or public purpose. All Materials on this Site are copyrighted and are protected by worldwide copyright laws and treaty provisions. Any unauthorized use of the Materials may violate copyright laws, trademark laws, the laws of privacy and publicity, and civil and criminal statutes.
>
> * * *
>
> Any claim relating to the Materials shall be governed by the internal substantive laws of the State of California, United States of America. Any cause of action you may have with respect to your use of this Site must be commenced within (1) year after the claim or cause of action arises.

FAC Ex. B, Dkt. No. 50-2. Plaintiffs argue that the broad language "[a]ny claim relating to the Materials" encompasses the claims of Dickey and the national class because the FAC alleges Dickey viewed and relied on the AMD website when he made his purchase, and the FAC's

7

15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

national class definition requires that members have viewed and relied on the AMD website's representations. Dkt. No. 57 at 19-20. Defendant argues that the "Terms of Use / Copyright" found on AMD's website is limited to the use of AMD's website and only narrowly governs claims related to AMD's trademarks and copyrights. Dkt. No. 52 at 17.

This court's prior dismissal order indicated that Dickey could not likely rely on the Terms of Use / Copyright to establish the applicability of California law to a putative nationwide class of plaintiffs who may or may not have even visited AMD's website. Dkt. No. 46 at 11. Dickey is no longer seeking to represent individuals who did not visit AMD's website. FAC ¶ 60. After reconsidering the parties' arguments in light of this amendment, the court is persuaded that Dickey has alleged a sufficient factual basis that the Terms of Use / Copyright applies to his claims.

Defendant cites to cases in which a choice of law provision in a website's Terms of Use did not apply, but each case is distinguishable. *See* Dkt. No. 52 at 18. In *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014), cited by defendant, the plaintiff never alleged that the plaintiff even used the defendant's websites. In the instant case, unlike in *Frenzel*, the FAC alleges that Dickey viewed and relied on the representations on AMD's website. *See* FAC ¶¶ 47-49.

In the case of *In re Sony Gaming Networks & Customer Data Sec. Breach Litigation*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012), also cited by defendant, the court reasoned "[b]y its own terms. . . the provision dictates only that California law applies to the construction and interpretation of the contract, and thus the provision does not apply to Plaintiffs' non-contractual claims asserted under California's consumer protection statutes." Here, the choice of law provision applies to "[a]ny claim relating to the Materials," FAC Ex. B, Dkt. No. 50-2, and defendant does not argue that such language should be construed to limit the choice of law provision to the construction and interpretation of the contract.

Finally, in *Nikolin v. Samsung Elecs. Am., Inc.*, No. CIV.A. 10-1456, 2010 WL 4116997, at *4 n.3 (D.N.J. Oct. 18, 2010), the court rejected the plaintiff's argument that the choice of law provision in the defendant's website's Terms of Use applied to the plaintiff's consumer fraud

8

15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

claims because "[b]y its express language, the 'Terms of Use' 'govern [the website visitor] while on this site,' and in a subsection titled 'Violation of Terms of This Site,' they state that New Jersey law governs '[a]ny action *related to these Terms*.'" (emphasis added). Moreover, in *Nikolin*, the plaintiff did not allege that "either she or Samsung violated the terms of Samsung's website" or that "her claims arise under the website's terms." *Id*. Here, the Terms of Use / Copyright only require that the claim relate to the "Materials," not the terms, and the FAC alleges that Dickey relied on the "Materials." Thus, the court is unable to conclude based on *Nikolin* that Dickey's claims do not fall under the scope of the choice of law provision.

Defendant argues that the language "[a]ny claim relating to the Materials" does not mean that the choice of law provision applies to "any and every claim relating to advertisement that may appear on AMD's website." Dkt. No. 52 at 17. Rather, defendant argues, it applies more narrowly to claims related to "AMD's trademark and copyright rights to the 'Materials' on AMD's website." *Id*. However, a disclaimer in the Terms of Use / Copyright suggests that the document's scope may be broader:

> Disclaimer
>
> THE MATERIALS ON THIS SITE ARE PROVIDED "AS IS" WITHOUT ANY EXPRESS OR IMPLIED WARRANTY OF ANY KIND INCLUDING WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT OF INTELLECTUAL PROPERTY, OR FITNESS FOR ANY PARTICULAR PURPOSE. IN NO EVENT SHALL AMD OR ITS SUPPLIERS BE LIABLE FOR ANY DAMAGES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF PROFITS, BUSINESS INTERRUPTION, LOSS OF INFORMATION, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES) ARISING OUT OF THE USE OF OR INABILITY TO USE THE MATERIALS, EVEN IF AMD HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. ***AMD and its suppliers further do not warrant the accuracy or completeness of the information, text, graphics, links or other items contained within these materials***. AMD may make changes to these materials, or to the products described therein, at any time without notice. AMD makes no commitment to update the Materials.

FAC Ex. B, Dkt. No. 50-2 (emphasis added). This text suggests the Terms of Use / Copyright is not necessarily limited to AMD's trademark and copyright rights, but more broadly includes

claims related to "the accuracy or completeness of the information" on AMD's website. *See id.* At the pleading stage, when the court must draw reasonable inferences in the plaintiff's favor, the court is not persuaded by defendant's argument that the choice of law provision does not govern Dickey's claims arising out of the alleged misrepresentations on AMD's website.

Accordingly, the court declines to dismiss Dickey's California law claims merely on the grounds that Alabama law should apply.

### D. Fraud-Based Claims

Defendant argues that plaintiffs' CLRA, UCL, FAL, fraudulent inducement, and negligent misrepresentation causes of action must be dismissed with prejudice because plaintiffs are incapable of pleading facts to support the elements of fraud. *Id.* at 8. The Ninth Circuit has held that "where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Plaintiffs' claims sound in fraud, and are thus subject to Rule 9(b)'s pleading requirements. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) ("Plaintiff's claims under the UCL, FAL, CLRA, and for Negligent Misrepresentation . . . sound in fraud, and are subject to the heightened pleading requirements of Rule 9(b).") (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)). "[I]n order to be deceived, members of the public must have had an expectation or an assumption about the matter in question." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (citation omitted). Under California law, "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).

Plaintiffs' complaint cites non-technical AMD written materials to support plaintiffs'

argument that AMD made misleading statements on what constitutes a "core." For example, plaintiff alleges that in an investor filing, AMD stated:

> "… semiconductor companies are designing and developing multi-core [CPUs], where multiple processor cores are placed on a single die or in a single processor. Multi-core [CPUs] offer enhanced overall system performance and efficiency because computing tasks can be spread across two or more processing cores, each of which can execute a task [i.e., a calculation] at full speed."

FAC ¶ 20 (citing a 2014 AMD form 10-K, FAC Ex. A). The complaint also alleges that in 2010, AMD stated that its four-core CPUs are offered "[w]ith the power of four processor cores on a single chip, [and] deliver[] industry-leading multitasking performance."[2] By contrast, plaintiff alleges, at least one AMD technical presentation acknowledges that AMD's modules have "additional sharing" when compared to existing cores and that "modules," rather than the module processing units that make up modules, have "everything necessary to schedule a code on these processors." *Id.* ¶ 41 (citing AMD, "Bulldozer" Processor Topology, May 28, 2013, www.youtube.com/watch?v=4EAuVsXWQ0s). The complaint also cites technical publications by third parties that allegedly distinguish between AMD's module processing units and cores. For example, a page on the Tom's Hardware Guide website stated that "the Bulldozer module doesn't incorporate two complete cores."[3]

Defendant raises three arguments for why plaintiffs' fraud-based claim should be dismissed. The court addresses each argument below.

### 1.     **Lack of Factual Basis for Plaintiffs' Expectations**

Defendant first argues that plaintiffs have not adequately alleged reliance because they did not identify any statement by AMD or anyone else to support a reasonable expectation that the chips would not share any resources or to support plaintiffs' expectations regarding industry standards. Dkt. No. 52 at 9. Defendant points out that the plaintiffs only allege to have personally

---

[2] *Id.* ¶ 22 (citing www.newegg.com/Product/Product.aspx?Item=N82E16819103894).
[3] *Id.* ¶ 39 (citing Per-Core Performance - AMD Bulldozer Review: FX-8150 Gets Tested, www.tomshardware.com/reviews/fx-8150-zambezi-bulldozer-990fx,3043-3.html)

11
15-cv-04922-RMW
ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT
MW-RS

reviewed the statement "8 cores." *Id.* Plaintiffs' opposition responds that plaintiffs need not trace their understanding of the term "core" to a definitional statement by AMD. Rather, plaintiffs assert, it is sufficient to allege that their understandings come from "the accepted and commonly understood use of the term within the PC enthusiast industry." Dkt. No. 57 at 13. Defendant does not cite any case law that squarely requires a plaintiff alleging that a defendant's use of a term was contrary to plaintiff's understanding and the commonly accepted use of the term to further allege that the plaintiff personally viewed specific statements in support of such an understanding.

*Davidson v. Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 WL 3919857 (N.D. Cal. Aug. 8, 2014), on which defendant relies, only supports a portion of defendant's argument. In *Davidson*, the court dismissed the plaintiff's fraudulent misrepresentation claims that the defendant's cleansing wipes were not "flushable" (contrary to statements on their packaging) on two grounds. *Id.* at *9. First, the court found, Davidson "does not allege that she saw any of defendants' advertisements or websites—let alone that she relied on them in deciding to make her purchase." *Id.* Second, the court found, Davidson "does not allege that she was unable to flush the product down the toilet, or that the product caused any problems with her pipes." *Id.*

*Davidson* is analogous to the instant case in that Dickey and Parmer do not allege to have seen particular statements by AMD or anyone else indicating that each core independently "can execute a task [i.e., a calculation] at *full speed*." FAC ¶ 20. They only allege to have seen representations from AMD indicating that the processors they purchased had "8 cores." *See id.* ¶¶ 47-51, 54-56. Contrary to AMD's contention, however, the *Davidson* court did not dismiss that case due to the plaintiff's failure to plead the basis for her understanding of the term "flushable." Thus, *Davidson* does not support AMD's argument that Dickey and Parmer were necessarily required to state the exact source of their understanding of the term "core." Moreover, the *Davidson* court's second ground for dismissal—failure to adequately allege facts suggesting that the wipes could not be "flushed"—does not apply to the instant case because Dickey and Parmer allege that the AMD processors they purchased did not perform as well as a CPU with the same

1   clock speed but with eight true cores. FAC ¶¶ 50, 56.

2   The court is not convinced that Dickey and Parmer were required to identify a particular statement by AMD or anyone else representing AMD's cores as completely independent so long as plaintiffs alleged a particular, plausible understanding of the term "core" as independent such that AMD's use of the term would be misleading. However, as discussed below, plaintiffs have failed to allege their expectations with sufficient particularity.

### 2. Lack of Specificity of Plaintiffs' Expectations and Industry Standards

Defendant's second argument is that plaintiffs failed to allege that plaintiffs expected that the cores in the AMD processors they purchased would be completely independent and without any shared resources. Defendant's third argument is that plaintiffs' attempt to incorporate a vague "industry standard" into their definition of "core" is insufficient to meet the pleading requirements of the Federal Rules of Civil Procedure. The court addresses these arguments together.

According to the complaint, Dickey and Parmer each "reasonably expected, based on the industry-standard definition of a core . . . that each of the 8 cores in the [Bulldozer chip] was independent from each other." FAC ¶¶ 51, 55. In their opposition, plaintiffs argue that in this portion of the complaint, plaintiffs are in fact alleging that their understandings of the term "core" "match the alleged industry standard definition" and "reference and incorporate the definition discussed and formed throughout the FAC." Dkt. No. 57 at 15-16. Because the complaint alleges that plaintiffs' expectations regarding the independence of the cores were "based on the industry-standard definition of a core," plaintiffs argue, one must infer that plaintiffs "expected that the Bulldozer CPUs they purchased would feature 8 independent processors that were independently capable of performing simultaneous calculations at full speed." *Id.* at 15.

The court finds, however, that the inference plaintiffs have attempted to draw is an "unwarranted deduction[]," *In re Gilead Scis. Secs. Litig.*, 536 at 1055, as the fact that plaintiffs' understandings were "based on" a purported industry definition does not suggest that plaintiffs' understandings were identical to such definition.

Moreover, if plaintiffs are attempting to explicitly incorporate an industry definition of "core" as "defined and developed throughout the entire FAC," Dkt. No. 57 at 15, into plaintiffs' understandings of "core," the complaint would then suffer the new defect of failing to allege a short and plain statement of plaintiffs' expectations. *See* Fed. R. Civ. P. 8. This defect is in addition to plaintiffs' failure to describe with particularity the circumstances constituting fraud as required by Rule 9(b).

Additionally, while both plaintiffs purportedly based their expectations on an "industry-standard definition of a core," portions of plaintiff's complaint suggest that there is no such industry-standard definition. One of the industry articles cited in the complaint actually suggests that AMD's use of the term "core" to refer to an element with an independent integer execution unit (and not necessarily an independent FPU) was appropriate. *See* FAC ¶ 39 nn.25-26 (citing http://www.tomshardware.com/reviews/fx-8150-zambezi-bulldozer-990fx,3043-3.html) ("To best accommodate its Bulldozer module, the company is saying that anything with its own integer execution pipelines qualifies as a core (no surprise there, right?), if only because most processor workloads emphasize integer math. I don't personally have any problem with that definition.").[4] Plaintiffs do not cite an industry organization's technical standard on core design or even a dictionary definition of "core" to clear up this confusion. Thus, to the extent that there is an industry standard definition of "core," plaintiffs have not alleged that the definition prohibits the sharing of resources between cores.

The court finds that plaintiffs' amended allegations fail to cure the deficiencies previously identified by the court, in particular whether plaintiffs believed that a core could not share resources as well as plaintiffs' particular understanding of what constitutes a core. *See* Dkt. No. 46 at 7. Accordingly, the court grants defendant's motion to dismiss plaintiffs' fraud-based claims.

---

[4] The court need not rely on the articles to which plaintiffs object to the court taking judicial notice to find plaintiffs have not alleged the existence of an industry standard definition of core. Plaintiffs do not object to the court taking judicial notice of the cited article from *Tom's Hardware Guide* because it is cited in the complaint. Dkt. No. 58 at 1.

1  Plaintiffs will be given one final opportunity to amend to attempt to cure these deficiencies.

## E. Express Warranty Claim

Defendant argues that plaintiffs' express warranty claims should be dismissed for the same reasons that their fraud-based claims fail. "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). Plaintiffs claim that AMD's marketing and packaging materials stating the number of cores on Bulldozer processors created an express warranty under California law that the CPUs would contain the number of cores so stated. *See* FAC ¶¶ 123-125.

Defendant argues that plaintiffs fail to allege plaintiffs' understanding of "core" with sufficient particularity and thus fail to cure the defects the court identified in the original complaint. Dkt. No. 52 at 12. The court previously ruled, "plaintiff has not adequately alleged a breach of an express warranty because he has not adequately alleged what his understanding of a 'core' was." Dkt. No. 46 at 12. Plaintiffs argue, "[b]y *specifically* alleging that their understandings of the term 'core' are 'based on the industry-standard definition of a core,' Plaintiffs reference and incorporate the definition discussed and formed throughout the FAC." Dkt. No. 57 at 16 (citing FAC ¶¶ 51, 55). However, as with plaintiffs' fraud claim, the court cannot reasonably infer from plaintiffs' allegations that plaintiffs' understandings are somehow identical to the definition of 'core' formed in the FAC. Moreover, as explained above, plaintiffs have not adequately alleged the existence of an industry-standard definition of a core, and their attempt to incorporate by reference all of the inconsistent definitions of "core" cited in their complaint is improper. Because the FAC only alleges that Dickey and Parmer expected the cores to be "independent," without indicating what "independent" meant to Dickey and Parmer, the FAC does not adequately allege Dickey and Parmer's understanding of what a "core" is. *See* FAC ¶¶ 51, 55.

United States District Court
Northern District of California

1   Accordingly, the court grants defendant's motion to dismiss plaintiffs' breach of warranty
2   claim. As with the fraud-based claims, plaintiffs will be given one final opportunity to amend to
3   attempt to cure the deficiencies identified above.

### F.     Standing for Injunctive Relief

Defendant also argues that plaintiffs have failed to show that they have standing to seek injunctive relief. Because the court has dismissed plaintiffs' claims on the merits, the court need not address defendant's standing arguments.

### III.    ORDER

For the foregoing reasons, the court GRANTS defendant's motion to dismiss plaintiffs' claims. Within 14 days, plaintiff shall submit an amended complaint that corrects the deficiencies identified in this order.

**IT IS SO ORDERED.**

Dated: October 31, 2016

_____
Ronald M. Whyte
United States District Judge