UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY DICKEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>Defendant. | Case No. 15-cv-04922-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION TO STRIKE**<br><br>Re: Dkt. No. 78, 85 |

Pending before the Court are two motions. Defendant Advanced Micro Devices, Inc. moves to dismiss Plaintiffs Tony Dickey and Paul Parmer's second amended complaint for failure to state a claim. Dkt. No. 78 ("Mot. to Dismiss SAC"). Plaintiffs also move to strike a portion of Defendant's reply brief that it filed in support of the motion to dismiss. Dkt. No. 85. For the reasons articulated below, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss and DENIES Plaintiffs' motion to strike.

**I.  BACKGROUND**

Following the Court's previous order granting Defendants' motion to dismiss, Plaintiffs filed a second amended class action complaint on January 6, 2017, alleging that Defendant misrepresented the number of core processors in its "Bulldozer" line of central processing units ("CPUs"). Dkt. No. 76 ("SAC"). On the basis of this alleged misrepresentation, Plaintiffs bring six causes of action against Defendant: (1) California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200 *et seq.*; (3) California False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500 *et seq.*; (4) fraud in the inducement; (5) breach of express warranty; and (6) negligent misrepresentation. *Id.*

Plaintiffs argue in their complaint that Defendant's Bulldozer products do not contain eight "cores" as advertised. *Id.* ¶ 8. According to Plaintiffs, a "core" is able to operate (*e.g.*, perform calculations and execute instructions) independently from other cores positioned on a chip, which leads, in turn, to improved performance. *Id.* ¶¶ 23–24. The Bulldozer CPUs, however, contain eight "sub-processors" that share resources instead. *Id.* ¶ 38. Shared resources inhibit chips from "operat[ing] and simultaneously multitask[ing]," which results in bottlenecks during data processing. *Id.* ¶¶ 38, 41. Because the Bulldozer CPUs share resources between two "cores," they functionally only have four — rather than eight — cores. *Id.* ¶¶ 38–43. Therefore, Plaintiffs claim the products that they purchased are inferior to the products that Defendant advertised. *Id.* ¶ 39.

Both named Plaintiffs specify the representations upon which they relied. Plaintiff Tony Dickey alleges that he visited Defendant's website at AMD.com on March 10, 2015, where he saw materials indicating that AMD's FX-9590 Bulldozer chip was "the first native 8-core desktop processor" and had "8 cores." SAC ¶¶ 50, 52. Plaintiff Dickey alleges that he then went to online retailer Newegg.com and purchased two FX-9590 Bulldozer processors for $299.99. *Id.* ¶¶ 51–52. Plaintiff Dickey also alleges that the Newegg.com website contained additional representations created by AMD indicating the FX-9590 Bulldozer was the "first native 8-core desktop processor" and "the industry's first and only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.* ¶ 51. Plaintiff Dickey further alleges that the packaging for the FX-9590 processors indicated that the CPU was an "8-core" processor. *Id.* ¶ 52.

Plaintiff Paul Parmer similarly alleges that he visited Defendant's website at AMD.com and saw materials indicating that the FX-8350 Black Edition 8-Core Bulldozer chip was "the first native 8-core desktop processor" and "the industry's only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.* ¶ 60. Relying on these representations, Plaintiff Parmer purchased the FX-8350 Black Edition 8-Core Bulldozer processor online in June 2005 at Amazon.com for $189.99. *Id.* ¶¶ 58, 62.

Both Plaintiffs allege that they relied on Defendant's advertisements as well as their "own

1 understanding of the term 'core'" in "believ[ing] that the . . . 8-Core Bulldozer processor would
2 contain 8 cores, such that each 'core' would be independent from all others (i.e., it would not share
3 resources with the other cores) and would be capable of performing independent calculations at
4 full speed." *Id.* ¶¶ 54, 62. Plaintiffs allege that Defendant's representations regarding the number
5 of cores on each Bulldozer chip were false. *Id.* ¶¶ 38–43. In their claims against the Defendant,
6 Plaintiffs seek both monetary and injunctive relief. *Id.* ¶¶ 56–65, 72.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must demonstrate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide more than conclusory statements or "a formulaic recitation of the elements of a cause of action" for the court to find a facially plausible claim. *Id.* at 555. Rather, the complaint must present facts which allow "the reasonable inference" of a defendant's liability for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court construes factual inferences in a light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Rule 9(b) imposes a heightened pleading standard for claims that "sound in fraud." Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

## III. ANALYSIS

### A. Motion to Dismiss

Defendant argues that Plaintiffs' Second Amended Complaint should be dismissed for failure to state a claim. Although Defendant divides its arguments into fraud-based and non-fraud

based claims, its overarching point is the same for all six claims: Plaintiffs have failed to plead sufficient facts to support their expectation that Defendant's Bulldozer multi-core processors would contain eight independent cores. Mot. to Dismiss SAC at 12–15. Defendant further argues that Plaintiffs' request for injunctive relief should be dismissed for lack of standing. *Id.* at 16.

### i. Misrepresentation Claims

#### a. Basis for Plaintiffs' Expectations

Defendant first argues that the Court should dismiss Plaintiffs' claims because Plaintiffs do not plead facts to support their expectation that a "core" will not share resources. *Id.* at 12–14. Defendant maintains that Plaintiffs have failed to state sufficient facts to support the existence of an accepted and well-established industry standard definition of the term "core" on which to base their expectations. However, this misstates Plaintiffs' amended complaint. *See* SAC at ¶ 29. Plaintiffs' expectations that a core would operate independently, without shared resources, was not based on an industry standard. *Id.* Rather, Plaintiffs allege that their expectations are based on Defendant's advertisements for their "8-core" product and their own understanding of the term "core." *Id.*

Contrary to Defendant's urging, more detail about the basis for Plaintiffs' understanding is not needed to survive the motion to dismiss, even under Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."). Indeed the Court has already rejected a similar argument. In its previous order granting the Defendant's motion to dismiss, the Court explained that it "is not convinced that [Plaintiffs] were required to identify a particular statement by AMD or anyone else representing AMD's cores as completely independent so long as plaintiffs alleged a particular, plausible understanding of the term 'core' as independent such that AMD's use of the term would be misleading." Dkt. No. 71 at 13. Plaintiffs have done so here. *See, e.g.*, SAC ¶¶ 54, 62.

#### b. Reasonable Consumer Test

To the extent that Defendant also argues that Plaintiffs' understanding is unreasonable, the Court is not persuaded. To prevail on their claims, Plaintiffs must establish that Defendant's

4

representations are likely to deceive a reasonable consumer. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The reasonable consumer test assesses not whether it is *possible* that an advertisement will deceive consumers, but rather whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Whether a misrepresentation would mislead a reasonable consumer is generally a question of fact not suited for resolution on a motion to dismiss. *Williams*, 552 F.3d at 939. Only in rare cases have courts concluded that consumers' stated expectations were unreasonable as a matter of law. *See, e.g.*, *Werbel ex rel. v. Pepsico, Inc.*, No. C 09–04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010); *McKinnis, et al. v. Kellogg USA*, No. CV 07-2611 ABC, 2007 WL 4766060, at *5 (Sept. 19, 2007).

In *Werbel*, for example, the court granted a motion to dismiss where the plaintiffs alleged that they were misled into believing that "Cap'n Crunch's Crunch Berries" cereal derived some of its nutritional value from real fruit. The court held that no reasonable consumer could believe that "cereal balls with a rough, textured surface in hues of deep purple, teal, chartreuse green and bright red" derived nutrition from real fruit. *Werbel*, 2010 WL 2673860, at *3. The court further noted that the packaging clearly states the product is "SWEETENED CORN & OAT CEREAL." *Id.*; *see also McKinnis, et al. v. Kellogg USA*, No. CV 07-2611 ABC, 2007 WL 4766060, at *4–*5 (N.D. Cal. Sept. 19, 2007) (concluding that no reasonable consumer would believe from defendant's brand name "Froot Loops," the bright colors and ring-shape of the cereal, or the banner on the box stating "natural fruit flavors," that the product contained natural fruit).

Here, in contrast, the Plaintiffs allege that the statements (1) "8-core"; (2) "first native 8-core desktop processor"; and (3) "the industry's only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture" led the Plaintiffs to believe that each core in Defendant's 8-Core Bulldozer chips would be fully independent, without sharing resources, and capable of performing tasks simultaneously. SAC ¶ 38. Defendants have not explained why Plaintiffs' understanding is unreasonable as a matter of law. Viewing the facts in the light most favorable to Plaintiffs, *Manzarek*, 519 F.3d at 1031, the

5

Court is unable to find as a matter of law that no reasonable consumer of Defendant's product would interpret Defendant's advertisements to mean that the "cores" would each operate independently. *See Williams*, 552 F.3d at 939 (reversing district court decision granting motion to dismiss because representations on product packaging could mislead a reasonable consumer).

### ii. Injunctive Relief

Defendant finally argues that the Court should dismiss Plaintiffs' request for injunctive relief because Plaintiffs lack standing to seek such relief. Mot. to Dismiss SAC at 16. To have standing to seek injunctive relief, a plaintiff must "demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)). Classwide injunctive relief is not available "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief." *Hodger-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). The majority of district courts hold that in false advertising cases, plaintiffs have no standing to seek prospective injunctive relief if they do not intend to purchase the product again in the future. *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 970 (N.D. Cal. 2014). The Court agrees with this analysis. *See, e.g.*, *Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332-HSG, 2015 WL 2170214, at *8 (N.D. Cal. May 8, 2015) (analyzing standing in false advertising case).

Plaintiffs contend that they "are likely to consider purchasing" Defendant's products again because Defendant is one of only two major companies that sell such processors. SAC ¶¶ 57, 65. However, Plaintiffs also inconsistently state that had they known Bulldozer processors share resources, they would not have purchased or would have paid less for them. *Id.* ¶¶ 55, 63. Regardless, it is implausible that Plaintiffs risk being harmed by the same product again now that they are aware of how it works. During the hearing, held on March 17, 2017, Plaintiffs indicated that they simply wish to preserve this argument for appeal. The Court finds that the Plaintiffs have not alleged a real threat of future injury and therefore do not have standing to seek injunctive relief.

### B. Motion to Strike

Defendant has filed a request for judicial notice of certain evidence in support of its

Motion to Dismiss. *See* Dkt. No. 79. Because the Court does not rely upon any of the proffered documents in its analysis, the Court DENIES as moot the request for judicial notice. Accordingly, Plaintiffs' motion to strike is also moot. *See* Dkt. No. 85.

## IV. CONCLUSION

The Court GRANTS Defendant's motion to dismiss Plaintiffs' claims for injunctive relief for lack of standing. The Court otherwise DENIES the motion. The Court also DENIES Plaintiffs' motion to strike as moot. Defendant shall have 21 days from the date of this Order to respond to the complaint. The Court further sets a Case Management Conference for August 1, 2017, at 2:00 p.m. in Courtroom 2, 4th Floor, Oakland, CA.

**IT IS SO ORDERED.**

Dated: 6/14/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge