UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY DICKEY, et al., <br>     Plaintiffs, <br> v. <br> ADVANCED MICRO DEVICES, INC., <br>     Defendant. | Case No. 15-cv-04922-HSG <br><br> **ORDER GRANTING MOTION FOR CLASS CERTIFICATION** <br><br> Re: Dkt. No. 118 |

Pending before the Court is the Plaintiffs' motion for class certification. Dkt. No. 118. For the following reasons, the Court GRANTS the motion.

## I. BACKGROUND

On March 16, 2017, Plaintiffs Tony Dickey and Paul Parmer filed the operative second amended class action complaint alleging that Defendant Advanced Micro Devices, Inc. ("AMD") misrepresented the number of core processors in its "Bulldozer" line of central processing units ("CPUs"). Dkt. 94 ("SAC"). Plaintiffs bring six causes of action, alleging violations of California's (1) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200 *et seq.*; (3) False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500 *et seq.*; as well as (4) fraud in the inducement; (5) breach of express warranty; and (6) negligent misrepresentation. *Id.*

Plaintiffs argue in their complaint that Defendant's Bulldozer products do not contain eight "cores" as claimed and advertised. *Id.* ¶ 8. According to Plaintiffs, a "core" is a processing unit that is able to operate (*e.g.*, perform calculations and execute instructions) independent from other cores positioned on a chip. *Id.* ¶ 23–24. Plaintiffs allege that the Bulldozer CPUs, advertised as having eight cores, actually contain eight "sub-processors" which share resources, such as L2 memory caches and floating point units ("FPUs"). *Id.* ¶ 37–49. Plaintiffs allege that the sharing

of resources in the Bulldozer CPUs results in bottlenecks during data processing, inhibiting the chips from "simultaneously multitask[ing]." *Id.* ¶¶ 38, 41. Plaintiffs allege that, because resources are shared between two "cores," the Bulldozer CPUs functionally only have four cores. *Id.* ¶ 38–43. Therefore, Plaintiffs claim the products they purchased are inferior to the products as represented by the Defendant. *Id.* ¶ 39.

Plaintiff Tony Dickey claims to have visited Defendant's website at AMD.com on March 10, 2015, where he saw materials indicating AMD's FX-9590 Bulldozer chip was "the first native 8-core desktop processor" and had "8 cores." *Id.* ¶¶ 50, 52. Plaintiff Dickey alleges he then proceeded to the online retailer Newegg.com and purchased two FX-9590 Bulldozer processors for $299.99. *Id.* ¶¶ 51–52. Plaintiff Dickey also alleges the Newegg.com website contained additional representations created by AMD indicating the FX-9590 Bulldozer was the "first native 8-core desktop processor" and "the industry's first and only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.* ¶ 51. Plaintiff Dickey further alleges that the packaging materials on the FX-9590 processors he received indicated the CPU was an "8-core" processor. *Id.* ¶ 52.

Plaintiff Paul Parmer similarly alleges he visited Defendant's website at AMD.com and saw materials indicating that the FX-8350 Black Edition 8-Core Bulldozer chip was "the first native 8-core desktop processor" and "the industry's only native 8-core desktop processor for unmatched multitasking and pure core performance with 'Bulldozer' architecture." *Id.* ¶ 60. Relying on these representations, Plaintiff Parmer purchased the FX-8350 Black Edition 8-Core Bulldozer processor online in June 2005 at Amazon.com for $189.99. *Id.* ¶¶ 58, 62.

Both Named Plaintiffs allege they relied on Defendant's advertisements as well as their "own understanding of the term 'core'" in "believ[ing] that the . . . 8-Core Bulldozer processor would contain 8 cores, such that each 'core' would be independent from all others (i.e., it would not share resources with the other cores) and would be capable of performing independent calculations at full speed." *Id.* ¶¶ 54, 62. Plaintiffs allege that Defendant's representations regarding the number of cores on each Bulldozer chip were false. *Id.* ¶¶ 38–43. In their claims against the Defendant, Plaintiffs seek monetary and injunctive relief. *Id.* ¶¶ 56–65, 96, 109, 116,

2

127, 137, 147. Plaintiffs now move for class certification.[1] Dkt. Nos. 118 (redacted public version) ("Mot."); 117-4 (unredacted version).

## II. LEGAL STANDARD

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). First, the plaintiffs must establish that each of the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Where the plaintiffs "succeed[] in establishing all four of the 23(a) elements, [they] must then satisfy one of the three requirements of Rule 23(b)." *Civil Rights Educ. & Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1103 (9th Cir. 2017).

Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To determine whether a putative class action satisfies the requirements of Rule 23(b)(3), courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

While a court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust*

---

[1] Although the SAC seeks both monetary and injunctive relief, *see* SAC ¶ 96, Plaintiffs motion for class certification seeks only to certify a class under Rule 23(b)(3). The Court therefore addresses only the Rule 23(b)(3) certification sought in Plaintiffs' motion.

3

*Funds*, 568 U.S. 455, 465–66 (2013) (internal citations and quotation marks omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466 (citation omitted). A trial court's "broad discretion to certify a class . . . must be exercised within the framework of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *reh'g denied*, 273 F.3d 1266 (9th Cir. 2001) (citation omitted).

## III. ANALYSIS

Plaintiff seeks to certify the following class:

> All individuals who purchased one or more of the following AMD computer chips either (1) while residing in California or (2) after visiting the AMD.com website: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590.

*See* Mot. at 1.

Defendant contends that certification of these classes is inappropriate because Plaintiff and the classes fail to satisfy the commonality, predominance, and superiority requirements for a Rule 23(b)(3) class. The Court addresses each in turn and finds that the requirements of Rule 23(a) and Rule 23(b)(3) have been met in this case.

### A. Rule 23(a)

#### i. Numerosity

Plaintiffs contend that a "conservative estimate" places the class size "in the hundreds of thousands." Mot. at 6. Defendant does not contest that numerosity is satisfied in this proposed class. Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–6 (N.D. Cal. 2014) (citation omitted). The Court finds that numerosity is satisfied here because joinder of the estimated hundreds of thousands of class members would be impracticable.

#### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution—which means that

4

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'―even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

As Defendant acknowledges, Plaintiffs' California law claims are evaluated under a "reasonable consumer" test. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332 (Cal. 2011); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); Dkt. No. 122 (redacted public version) ("Opp.") at 13.[2] "Under the reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938 (internal quotation marks omitted).

Defendant disputes that Plaintiffs have met their burden of showing commonality of claims. Defendant contends that individual class members' understanding of the term "core" could differ substantially. Opp. at 13. Defendant notes that Plaintiffs have not identified the reasonable consumer's interpretation of the term "core" here at the class certification stage, providing only evidence of how Named Plaintiffs understood the term. *Id.* at 13–17. Defendant contends that no common understanding of the term "core" can be established that supports Plaintiffs' arguments because "a significant majority interpret 'core' in ways that are fully consistent with AMD's chips." *Id.* at 15.

Defendant's challenges are not persuasive. The central question raised is whether a reasonable consumer would have been deceived by the term "core" as used in Defendant's advertising. Whether or not Plaintiffs' prevail on the merits of their challenge, the answer to that question is common to all class members. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-

---

[2] An unredacted version filed under seal is located at Dkt. No. 121-4.

5

01271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) ("Whether an ordinary consumer reasonably believes [plaintiffs' interpretation of the misleading statements] is amenable to common proof: reviewing the advertisements, labels, and then asking the jury how they understand the message."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014). To the extent Defendant contends that the evidence provided thus far does not support Plaintiffs' theory of liability, Defendant's arguments are premature and not appropriate for resolution at the class certification stage. Accordingly, the Court finds that the commonality requirement is met in this case.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-extensive with those of absent class members," rather than "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In other words, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks omitted).

Defendant does not contest the typicality of Plaintiffs' claims. Plaintiffs' claims are both factually and legally similar to those of the putative class because the "8-core" representation at issue is the same for all class members. Mot. at 9–11; SAC ¶¶ 8–10, 66. Plaintiff has not alleged any individual claims. This is sufficient to satisfy the typicality requirement.

### iv. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other putative class members, and

6

(2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or proposed class counsel have a conflict with other class members. The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class to date and will continue to do so. The adequacy of representation requirement, therefore, is satisfied.

### B. Rule 23(b)(3)

To certify a class, Plaintiff must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that both are met in this case.

#### i. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and internal quotation marks omitted; brackets in original). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation and internal quotation marks omitted).

####### a. Materiality and Reliance

Defendant contends that "issues of falsity, materiality, injury or reliance" for each individual class member would predominate in this case. Opp. at 17. Defendant reiterates its argument that, because individual consumers understood the term "core" differently, the materiality of the alleged misrepresentation cannot be proved on a class-wide basis. *Id.* at 18–19. Defendants rely on the results of their own survey to show that "class members understood 'core' in different ways, *most* of which were consistent with AMD's design." Opp. at 20–21.

As discussed in Section III(A)(ii) above with respect to the commonality prong, the consumer protection laws at issue here evaluate materiality under a reasonable person standard, and "materiality is generally a question of fact." *See In re Tobacco II Cases*, 46 Cal. 4th at 327; *Kwikset*, 51 Cal. 4th at 332. Defendant's arguments, whether addressed to the commonality prong or the predominance prong, are not persuasive at the class certification stage. Because the issues of materiality and falsity are not evaluated on an individualized basis, these questions do not weigh against a finding of predominance.

####### b. Exposure

Defendants, citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012), contend that different members of the purported class saw different advertising statements that would have affected their understanding of the term "core" before making their purchases. Opp. at 21–22.

In cases alleging misrepresentation, "common issues predominate when plaintiffs are exposed to [a] common set of representations about a product." *Butler v. Porsche Cars N. Am., Inc.*, No. 16-CV-2042-LHK, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19, 2017); *see also Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (2004) ("[C]ertification of a class . . . may be appropriate where the plaintiffs allege that all members of the class were exposed to the same misrepresentations."). "[T]he relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 596.

The present case involves a single message, which appeared across all of the relevant

8

advertising. *See, e.g.,* Dkt. Nos. 118-6, 118-7 (identifying the Bulldozer processors as "8 core"). Defendant does not dispute that all class members were exposed to the same allegedly misleading message; rather, Defendant argues that some class members may have also been exposed to other information that would explain AMD's definition of the term "core." Opp. at 21.

Defendant cites a number of cases in support of its proposition that causation, materiality, and/or injury cannot be measured on a class-wide basis where "the evidence shows that materiality varies across the putative class." Opp. at 18. These cases are inapposite because, unlike the present case, they address the prospect of class members being exposed to entirely different statements (or to none at all). *See Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 926 (2010) ("[A] majority of the class members were '*never exposed*' to the alleged misrepresentation."); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 217–218 (2012) (finding the underlying facts in the complaint "indistinguishable" from those in which the "alleged misrepresentations were not uniformly made to proposed class members"); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 979 (2009) (finding that "common issue[s] of fact do not predominate over the proposed class because the class would include subscribers who never saw DIRECTV advertisements or representations of any kind before deciding to purchase the company's HD services"); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 536 (S.D. Cal. 2011) ("[T]he fact remains the proposed class members may have seen some, all or none of these statements prior to the purchase of their home warranty plans due to the varying ways in which they acquired their plans."); *Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK FFMX, 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) ("The Court here is not convinced that the common questions of Van's liability would predominate over the individual questions of *who* purchased Van's frozen waffles during the relevant class period, *which kind* of frozen waffles they purchased, *how many* they purchased, and whether the kinds they purchased contained false nutritional information.").[3]

---

[3] Defendant also cites *Jones v. ConAgra Foods, Inc.*, which found no cohesion among class members both because "consumers were exposed to label statements that varied by can size, variety, and time period," and because "even if the challenged statements were *facially* uniform, consumers' *understanding* of those representations would not be." No. C 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014). *Jones* found no evidence that the allegedly-misleading statements (claims that a product was "100% natural") were material to a reasonable

9

Defendant has, in essence, repurposed its argument that different class members may hold different understandings of the term "core" as a challenge to class-wide exposure. Because exposure to the alleged misleading statements is uniform across the class, and for the same reasons as discussed in Sections III(A)(ii) and III(B)(i)(a) above, these individualized issues of each class member's understanding are not at issue when materiality is assessed on a class-wide basis under a reasonable consumer standard.

          c. Damages

With respect to the monetary relief sought by a putative class, the predominance inquiry requires that "damages are capable of measurement on a classwide basis, in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film*, 847 F.3d at 1120 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)) (internal quotation marks omitted); *see also Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *8–12 (N.D. Cal. Feb. 13, 2018) (applying *Comcast*'s damages predominance requirement to proposed restitution calculation methods). As such, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable" to the relevant theory of liability. *Comcast*, 569 U.S. at 35. While a proffered model "need not be exact" at the class certification stage, it "must be consistent with [the plaintiff's] liability case." *Id.* (citations and internal quotation marks omitted); *see also Cal. v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 4155665, at *9 (N.D. Cal. Sept. 5, 2008) (stating that at class certification stage, court's role is to "discern only whether plaintiffs have advanced a *plausible* methodology to demonstrate that . . . injury can be proven on a class-wide basis") (emphasis added). Moreover, while predominance is not shown where "[q]uestions of individual damage calculations . . . inevitably overwhelm questions common to the class," *Comcast*, 569 U.S. at 34, the "presence of individualized damages" on its own is insufficient to defeat class certification, *Just Film*, 847 F.3d at 1120 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

---

consumer. *Id.* at *15–16. Defendant does not advance the argument here that the number of cores advertised in the Bulldozer processors is not material to a reasonable consumer.

10

Defendant contends that Plaintiff has not provided a damages model applicable on a class-wide basis. Opp. at 23–25. Plaintiffs' proposed model measures the difference between the price paid for an AMD processor marketed as "8-core" and an AMD processor marketed as "4-core." Mot. at 15. Plaintiffs have also provided an attorney declaration that summarizes pricing evidence to provide an estimate of their damages amount. Dkt. No. 117-10. Defendant, noting that Plaintiffs have provided no expert testimony in support of their damages model, challenge the admissibility of the supporting declaration and contend that "Plaintiffs were required to provide *expert* testimony to explain *why* their methodology is a valid measure of economic harm." Opp. at 23.

The Court disagrees. So long as Plaintiffs demonstrate damages to be measurable on a class-wide basis, expert testimony is not required to support a damages model. *See Brickman v. Fitbit, Inc.*, No. 3:15-CV-02077-JD, 2017 WL 5569827, at *7 (N.D. Cal. Nov. 20, 2017) (finding price premium damages model sufficient under *Comcast* without expert testimony). Plaintiffs' model measures the difference between the price paid for a product advertised as 8-core and the price paid for a product advertised as 4-core. This model directly links the proposed damages—the difference in the price one would pay for a processor believed to be 8-core and the price one would pay for a processor believed to be 4-core—to Plaintiffs' claims that they were deceived into purchasing 4-core processors for the price of an 8-core processor. That is sufficient under *Comcast*. *See Just Film*, 847 F.3d at 1121 (finding that at the class certification stage, "Plaintiffs need only show that [] damages can be determined without excessive difficulty and attributed to their theory of liability").

### d. Conclusion

Because Plaintiffs have demonstrated common exposure to the alleged misrepresentations and Plaintiffs' damages model is sufficient at this stage to show that damages traceable to the allegedly misleading claims can be measured on a class-wide basis, the Court finds that common questions of law predominate.

### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.* "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234–35 (9th Cir. 1996).

Defendant only contests superiority by positing the difficulty of ascertaining the members of the purported class.[4] Plaintiffs exclusively bring California state law claims. *See* SAC ¶¶ 76–147. Because California law applies to out-of-state class members only based on the terms of use on AMD's website, *see* Mot. at 4–6, individuals must have visited the website prior to purchase in order to qualify as class members. Defendant contends that Plaintiffs offer no method to assess which class members visited the AMD website before purchase. Opp. at 12. Defendant cites two cases, the first rejecting a class based on the complexity of determining residency, and therefore choice of law, of class members during the relevant time period, and the second denying class certification where identification of class members required a detailed review of each potential class member's personnel file. *Id.* (citing *Sullivan v. Chase*, 79 F.R.D. 246, 269 (N.D. Cal. 1978) and *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 WL 413749, at *8 (N.D. Cal. Feb. 13, 2008)). These cases both predate the Ninth Circuit's decision in *Briseno*, which held that self-selection via affidavit is a viable means to ascertain class members, and the defendant's interest in challenging individual claims can be protected through the claims administration process. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129–32 (9th Cir.), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313, 199 L. Ed. 2d 206 (2017).

---

[4] Defendant couches this argument as a threshold challenge to the certification of a nationwide class. Opp. at 11–12. Because Defendant raises only issues of ascertainability, the Court construes Defendant's arguments as addressed to the superiority prong.

12

Here, as in *Briseno*, the purported class can be self-identified. To the extent that Defendant argues that self-identified class members may not have visited AMD's website prior to their purchase, the Court can rely "on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to avoid or minimize fraudulent claims." *Id*. at 1130. Therefore, given that the expected recovery for each class member is relatively low, *see* Mot. at 15, the Court finds that a class action is the superior method to adjudicate this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for class certification and certifies the following class:

> All individuals who purchased one or more of the following AMD computer chips either (1) while residing in California or (2) after visiting the AMD.com website: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590.

The Court appoints Paul Parmer and Tony Dickey to represent the class, and appoints their attorneys at Edelson PC as class counsel. The Court **SETS** a further case management conference on February 5, 2019 at 2:00 p.m. The parties shall meet and confer and submit a joint case management statement by January 29, 2019. The joint statement should include a proposed case schedule through trial.

**IT IS SO ORDERED.**

Dated: 1/17/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge