UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY DICKEY, et al.,<br>　　　　Plaintiffs,<br>　v.<br>ADVANCED MICRO DEVICES, INC.,<br>　　　　Defendant. | Case No. 15-cv-04922-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 153 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Tony Dickey and Paul Parmer. Dkt. No. 153. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

## I. BACKGROUND

### A. Factual Background

Plaintiffs bring this consumer class action against Defendant Advanced Micro Devices, Inc. ("AMD"), alleging that Defendant engaged in deceptive practices when it purportedly misrepresented the number of central processing units ("CPUs") in its "Bulldozer Processors." *See generally* Dkt. No. 94 ("Second Amended Complaint" or "SAC"). According to Plaintiffs, AMD consistently advertised the Bulldozer Processors as having eight cores to outmatch its competitors. SAC ¶¶ 30–32. However, the Bulldozer Processors allegedly did not have eight cores, because the "cores" were actually sub-processors that could not operate and simultaneously multitask as "actual cores." *Id*. ¶¶ 24–29, 38. Plaintiffs contend that had they known the CPUs did not have eight-core capabilities, they would not have purchased the processors. *Id*. ¶¶ 55, 63.

Based on those facts, the SAC asserts the following six causes of action: (1) California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (4) fraud in the inducement; (5) breach of express warranties; and (6) negligent misrepresentation. SAC ¶¶ 76–147.

### B. Procedural History

Plaintiff Tony Dickey initially filed this action on October 26, 2015. Dkt. No. 1. The original complaint asserted the same causes of action as the SAC, plus an additional unjust enrichment claim. *See generally id.* Defendant moved to dismiss the complaint, and the Honorable Ronald M. Whyte granted Defendant's motion on April 7, 2016. Dkt. No. 46.

On May 5, 2016, Plaintiff Dickey and newly-added Plaintiff Paul Parmer filed their first amended complaint, removing the claim for unjust enrichment while realleging all the other causes of action. *See generally* Dkt. No. 50. Defendant again moved to dismiss the first amended complaint, and Judge Whyte granted Defendant's motion to dismiss with leave to amend. Dkt. No. 71. The case was reassigned to this Court on November 3, 2016. Dkt. No. 72. Plaintiffs filed the operative SAC on November 21, 2016, and Defendant moved to dismiss. Dkt. No. 78. The Court granted Defendant's motion to dismiss Plaintiffs' claims for injunctive relief, but otherwise denied the motion. Dkt. No. 96.

On March 27, 2018, Plaintiffs filed a motion for class certification. Dkt. No. 118. The Court granted the motion, certifying the following class:

> All individuals who purchased one or more of the following AMD computer chips either (1) while residing in California or (2) after visiting the AMD.com website: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590.

Dkt. No. 135 at 13. The Court appointed the Named Plaintiffs Dickey and Parmer to represent the class and appointed their attorneys at Edelson PC as Class Counsel. *Id.* On January 31, 2019, Defendant filed a petition in the Court of Appeals for permission to appeal the Court's class certification order, and the petition was denied. Dkt. Nos. 138, 148.

1       The parties participated in a mediation session before the Honorable James F. Holderman (Ret.) of JAMS in May 2019. Dkt. No. 146. They were able to reach an agreement in principle to settle the case on a class-wide basis, and agreed to stay any pretrial and trial deadlines. *Id*. Plaintiff moved for preliminary approval on August 23, 2019. Dkt. No. 153.

### C. Settlement Agreement

      Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on August 9, 2019. Dkt. No. 152-1 ("SA"). The key terms are as follows:

      <u>Class Definition</u>: The Settlement Class is defined as:

> [A]ll Persons who purchased one or more of the following AMD computer chips either (1) while residing in California or (2) after visiting the AMD.com website: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590.

SA ¶ 1.28. Excluded from the Class are any Judges or Magistrate Judges presiding over this action and their family members; Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former officers, directors, and employees; persons who properly execute and timely file a request for exclusion; and the legal representatives, successors, or assigns of any such excluded persons. *Id.*

      <u>Settlement Benefits</u>: Defendant will make a $12,100,000 non-reversionary payment. *Id.* ¶ 1.30. The settlement payment includes settlement payments to Class Members, settlement administrative expenses estimated between $350,000–$700,000, incentive awards, and any attorneys' fees and costs awards. *Id.* ¶¶ 1.26, 1.30, 8.1, 8.3. Individual settlement amounts are estimated to average approximately $37.50 per purchased processor. Dkt. No. 153-1 ¶ 10.

      <u>Release</u>: All settlement class members will release:

> any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative,

of every nature and description whatsoever, whether based on California's Unfair Competition Law, California's False Advertising Law, California's Consumer Legal Remedies Act, or on claims of fraudulent inducement, breach of express warranty, or negligent misrepresentation, or other federal, state, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any marketing materials, advertising, descriptions, facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the number of cores in AMD's FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590 processors, including all claims that were brought or could have been brought in the Action relating to representations about those CPUs.

SA ¶ 1.23. "Unknown Claims" mean claims:

that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.

*Id*. ¶ 1.32.

Class Notice: A third-party settlement administrator will send class notices via U.S. mail and/or email based on information provided by certain third-party resellers of the AMD processors at issue. *Id*. ¶ 4.1. The settlement administrator will also implement a digital media campaign targeting approximately 6,713,000 potential purchasers. Dkt. No. 153-3 ¶¶ 25–29. The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. SA ¶¶ 1.16, 4.2; Dkt. No. 152-1, Exs. C, D.

Opt-Out Procedure: The deadline for a class member to submit a request for exclusion is forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting a fee award are filed with the Court and posted to the settlement website. SA ¶ 1.18.

Incentive Award: The Named Plaintiffs will apply for incentive awards of no more than $7,500. *Id*. ¶ 8.3.

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees not to exceed one third of the settlement fund ($3,630,000), as well as costs. *Id*. ¶ 8.1.

//

//

4

## II. CLASS CERTIFICATION

Because no facts that would affect the Court's reasoning have changed since the Court approved the class on January 17, 2019, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order certifying the class.[1] *See* Dkt. No 135. In addition, the Court incorporates its previous analysis appointing Plaintiffs as class representatives, and Edelson PC as Class Counsel. *Id.* at 13.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). However, because the Court certified the class here prior to settlement, the Court need not apply this heightened standard.

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo*

---

[1] The Court notes that the only difference between the certified class and settlement class is that the certified class included "all individuals," whereas the settlement class includes "all persons." *Compare* Dkt. No. 135 at 14 *with* SA ¶ 1.28. This change is to permit businesses to participate in the settlement. Dkt. No. 153 at 8. The Court finds that this difference is not material such that it would change its initial class certification analysis.

*Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### B. Analysis

#### i. Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Lenovo*, 2018 WL 6099948, at *7 (citation and quotations omitted).

Here, Class Counsel believes, after significant discovery, class certification, and mediation, that the settlement is fair, adequate, and reasonable. *See* Dkt. No. 153 at 10; Dkt. No. 153-1 ¶¶ 3–10. Based on the record, the Court agrees that the nature of the settlement process conducted by the parties weighs in favor of preliminary approval.

#### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (citation and quotations omitted).

Although the Settlement Agreement authorizes Plaintiffs Dickey and Palmer to seek incentive awards of no more than $7,500 for their roles as Named Plaintiffs in this lawsuit, *see* SA ¶ 8.3, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk

6

undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate Plaintiffs' award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

Here, assuming a 20% claims rate, Plaintiffs estimate that Class Members will recover approximately $37.50 per purchased processor, and the total settlement amount constitutes approximately 20% of Plaintiffs' estimated maximum possible recovery at trial. Dkt. No. 153-1 ¶¶ 8–10; Dkt. No. 153 at 12. Plaintiffs acknowledge that there is substantial risk they would face in continuing to litigate this case, such as proceeding past a motion for summary judgment, maintaining class treatment, and prevailing at trial. Dkt. No. 153 at 11. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

## IV. MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notices, Dkt. No. 152-1, Exs. C and D, are the best practicable forms of notice under the circumstances.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| **Event** | **Date** |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing Deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 10/4/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge