UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY DICKEY, et al.,<br>　　　　Plaintiffs,<br>　v.<br>ADVANCED MICRO DEVICES, INC.,<br>　　　　Defendant. | Case No. 15-cv-04922-HSG<br>**ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL AND ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**<br>Re: Dkt. Nos. 161, 162 |

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs and expenses, and a class representative enhancement payment. Dkt. Nos. 161, 162. The Court held a final fairness hearing on February 20, 2020. Dkt. No. 164. For the reasons set forth below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for attorneys' fees, costs and expenses, and enhancement payment.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Tony Dickey and Paul Parmer bring this consumer class action against Defendant Advanced Micro Devices, Inc. ("AMD"), alleging that Defendant engaged in deceptive practices when it purportedly misrepresented the number of central processing units ("CPUs") in its "Bulldozer Processors." *See generally* Dkt. No. 94 ("Second Amended Complaint" or "SAC"). According to Plaintiffs, AMD consistently advertised the Bulldozer Processors as having eight cores to outmatch its competitors. SAC ¶¶ 30–32. However, the Bulldozer Processors allegedly did not have eight cores, because the "cores" were actually sub-processors that could not operate and simultaneously multitask as "actual cores." *Id*. ¶¶ 24–29, 38. Plaintiffs contend that had they

known the CPUs did not have eight-core capabilities, they would not have purchased the processors. *Id.* ¶¶ 55, 63.

Based on these facts, the SAC asserts the following six causes of action: (1) California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (4) fraud in the inducement; (5) breach of express warranties; and (6) negligent misrepresentation. SAC ¶¶ 76–147.

On April 7, 2016, Defendant moved to dismiss the complaint, and the Honorable Ronald M. Whyte granted the motion on April 7, 2016. Dkt. No. 46. On May 5, 2016, Plaintiff Dickey and newly-added Plaintiff Parmer filed their first amended complaint, removing the claim for unjust enrichment while realleging all the other causes of action. *See generally* Dkt. No. 50. Defendant again moved to dismiss the first amended complaint, and Judge Whyte granted Defendant's motion to dismiss with leave to amend. Dkt. No. 71. The case was reassigned to this Court on November 3, 2016. Dkt. No. 72. Plaintiffs filed the operative SAC on November 21, 2016, and Defendant moved to dismiss. Dkt. No. 78. The Court granted Defendant's motion to dismiss Plaintiffs' claims for injunctive relief, but otherwise denied the motion. Dkt. No. 96.

On March 27, 2018, Plaintiffs filed a motion for class certification. Dkt. No. 118. The Court granted the motion, certifying the following class:

> All individuals who purchased one or more of the following AMD computer chips either (1) while residing in California or (2) after visiting the AMD.com website: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590.

Dkt. No. 135 at 13. The Court appointed Named Plaintiffs Dickey and Parmer to represent the class and appointed their attorneys at Edelson PC as Class Counsel. *Id.* On January 31, 2019, Defendant filed a petition in the Court of Appeals for permission to appeal the Court's class certification order, and the petition was denied. Dkt. Nos. 138, 148.

The parties participated in a mediation session before the Honorable James F. Holderman (Ret.) of JAMS in May 2019. Dkt. No. 146. They were able to reach an agreement in principle to settle the case on a class-wide basis, and agreed to stay any pretrial and trial deadlines. *Id.* The

parties filed their motion for preliminary approval of class action settlement on August 23, 2019, Dkt. No.153, which the Court granted on October 4, 2019, Dkt. No. 154.

### B. Settlement Agreement

Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on August 9, 2019. Dkt. No. 162-3 ("SA"). The key terms are as follows:

<u>Class Definition</u>: The Settlement Class is defined as:

> [A]ll Persons who purchased one or more of the following AMD computer chips either (1) while residing in California or (2) after visiting the AMD.com website: FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590.

SA ¶ 1.28. Excluded from the Class are any Judges or Magistrate Judges presiding over this action and their family members; Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former officers, directors, and employees; persons who properly execute and timely file a request for exclusion; and the legal representatives, successors, or assigns of any such excluded persons. *Id.*

<u>Settlement Benefits</u>: Defendant will make a $12,100,000 non-reversionary payment. *Id.* ¶ 1.30. Individual settlement payments are estimated to average approximately $30.40 per purchased processor. Dkt. No. 163 at 3.[1]

All payments issued to Class Members via check will state on the face of the check that it will expire and become null and void unless cashed within ninety (90) days after the date of issuance. SA ¶ 2.1(e). Funds remaining from any uncashed checks provided during the initial distribution may be used for a second distribution to participating class members on a pro rata

---

[1] On February 20, 2020, Class Counsel filed the Declaration of Steven Weisbrot (Dkt. No. 163), indicating that Angeion Group, LLC ("Angeion") had previously identified, and denied, 2,333 claims (representing 3,892 eligible purchases) where the claimant listed a mailing address outside of the United States on their claim form. *Id.* at ¶ 5. Angeion subsequently determined that for 210 of those forms, the claimants indicated they were living in the state of California at the time of purchase. *Id.* at ¶ 6. As a result, the remaining 2,123 claims have been conditionally approved for payment, without objection by Defendant, and the updated payout and claim numbers are reflected in this Order. *Id.* at ¶ 7.

basis, and/or may be directed to the appropriate *cy pres* recipient. *Id.*

*Cy Pres* Distribution: To the extent that a Second Distribution is made and any Second Distribution checks remain uncashed after ninety (90) days, such funds shall be directed to the *cy pres* recipient, the Rose Foundation. SA ¶ 2.1(e), (f). The Parties agree that any fees will be paid exclusively from the Settlement Fund. *Id.*

Release: All settlement class members will release:

> any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on California's Unfair Competition Law, California's False Advertising Law, California's Consumer Legal Remedies Act, or on claims of fraudulent inducement, breach of express warranty, or negligent misrepresentation, or other federal, state, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any marketing materials, advertising, descriptions, facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the number of cores in AMD's FX-8120, FX-8150, FX-8320, FX-8350, FX-8370, FX-9370, and FX-9590 processors, including all claims that were brought or could have been brought in the Action relating to representations about those CPUs.

SA ¶ 1.23. "Unknown Claims" mean claims:

> that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.

*Id.* ¶ 1.32.

Class Notice: A third-party settlement administrator will send class notices via U.S. mail and/or email based on information provided by certain third-party resellers of the AMD processors at issue. *Id.* ¶ 4.1. The settlement administrator will also implement a digital media campaign targeting approximately 6,713,000 potential purchasers. Dkt. No. 153-3 ¶¶ 25–29. The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. SA ¶¶ 1.16, 4.2; Dkt. No.

United States District Court
Northern District of California

1 | 152-1, Exs. C, D.

<u>Opt-Out Procedure</u>: The deadline for a class member to submit a request for exclusion is forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting a fee award are filed with the Court and posted to the settlement website. SA ¶ 1.18.

<u>Incentive Award</u>: The Named Plaintiffs applied for incentive awards of no more than $7,500 for each Named Plaintiff. *Id*. ¶ 8.3.

<u>Attorneys' Fees and Costs</u>: Class Counsel has filed an application for attorneys' fees not to exceed 25% of the settlement fund, in the amount of $3,025,000, as well as costs in the amount of $47,517.37. *See* Dkt. No. 161 at 1; SA ¶ 8.1.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement on October 4, 2019, this order incorporates by reference its prior analysis as set forth in the order granting preliminary approval. *See* Dkt. No. 154 at 5; *see also* Dkt. No. 135.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a

5

proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 154 at 9. At preliminary approval, the Court approved the proposed notice plan, which called for a multi-pronged program using the third-party settlement administrator, Angeion. The proposed plan contemplated direct notice via email and U.S. mail to hundreds of thousands of class members, using the subpoenaed

6

purchase records of certain third-party vendors. *See* Dkt. 153-3 at 5. The direct notice via email was to include an electronic link to the claim form, and direct notice via U.S. mail was to contain a postcard with return prepaid postage. *Id*. In addition to direct notice, the plan also called for notification via a settlement website and a robust media campaign, using Internet banner ads on websites likely to be visited by class members. *Id*. The notice plan was successfully implemented. *See* Dkt. No. 162-2 at ¶¶ 5-19.

In light of these facts, the Court finds that the parties' notice process was "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (citation omitted).

The Court also finds that the appropriate government officials were properly and timely notified of the settlement agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of the notice and finds that it complied with all applicable requirements of CAFA.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk Plaintiffs would face in litigating the case given the nature of the asserted claims. After nearly four years, the settlement, which makes available to the Class a $12.1 million, non-reversionary common fund from which each eligible

7

1    claiming class member will receive a pro rata share, has ensured a favorable recovery for the class.

2    *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class

3    settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*,

4    2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 123,437 valid and approved claims covering 274,376 chips presents complex issues. *See* Dkt. No. 163 ¶10. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $12.1 million settlement amount, which represents more than 20% of Defendant's estimated maximum potential exposure, and will return over 50% of the money spent by each class member who filed a claim, falls well "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 162 at 1; *see, e.g.*, *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases). The parties estimate that the recovery of each individual Class Member will be approximately $30.40 per-purchased chip. *See* Dkt. No. 163.

Further, where a class action settlement contains a *cy pres* award provision, the "*cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal quotations omitted). For any residual funds, the Settlement before the Court contemplates that the funds will be distributed to the Rose Foundation. The Rose Foundation supports grassroots initiatives to inspire community action to protect the environment, consumers and public health. The Court finds that the *cy pres* distribution to the Rose Foundation in the Settlement satisfies the Ninth Circuit's requirements. Its work is relevant to the harm alleged in this case, and will provide a benefit to the interests of

8

aggrieved consumers.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after Plaintiffs conducted extensive discovery. The Parties exchanged substantial fact and expert discovery, including the production of documents, the exchange of multiple sets of interrogatories, the depositions of Named Plaintiffs, and the disclosure of expert reports. *See* Dkt. No. 162-1 at ¶ 3. Specifically, the Parties collectively produced over 6,000 pages of documents, collectively responded to fifty-five (55) interrogatories, conducted full-day depositions of Mr. Dickey and Mr. Parmer on January 8, 2018, and January 16, 2018, respectively, and Defendant disclosed the expert reports of Dr. Thomas Conte, Dr. Dominique Hanssens, Kishore Mulchandani, and Justin McCrary. *See id.*; Dkt. No. 122. The Parties also litigated several discovery issues, including motion practice related to the disclosure and filing of expert reports. *See* Dkt. Nos. 110, 111. The Court finds that the parties received, examined, and analyzed information, documents, and materials sufficient to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Here, Class Counsel have extensive experience prosecuting and settling class actions, particularly in the consumer protection context. *See* Dkt. No. 162-1 at ¶ 9. More importantly, Class Counsel have been vigorously prosecuting this case for over four years. *Id*. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."). Here, out of the approximately 1,000,000 at-issue chip purchases, Angeion has received 123,437 valid and approved claims accounting for 274,376 chips purchases. *See* Dkt. No. 163 ¶ 10. There have been zero (0) objections and only six (6) requests for exclusion. *See* Dkt. No. 162-1 ¶ 24-25; Dkt. No. 162-2 ¶ 11. The 27.4% claims rate is an excellent result in the Court's experience. *See In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal. 2015) (holding that a claims rate between 25-30% is "an excellent result that counsels in favor of settlement approval"); *In re Nexus 6P Prod. Liab. Litig.*, No. 17- cv-02185BLF, 2019 WL 6622842, at *10 (N.D. Cal. Nov. 12, 2019) (a claims rate over 18% is "substantial").

Given the absence of any true objections and only six requests for exclusion, when over 600,000 potential class members were sent U.S. mail or email notice, and many others could have been exposed to publication notice, banner ads and other means of notice, the Class response weighs strongly in favor of final approval.[2] *See Rodriguez*, 563 F.3d at 967 (finding that final approval was favored where there were 54 objections out of 52,000 claims); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (final approval granted where 4.86% of the class requested exclusion); *In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *10 (zero objections and 31 opt-outs in a class of approximately 511,000 people "confirms that the

---

[2] The letter Mr. Adriel Douglass sent to the Court (Dkt. No. 160) is most plausibly read as an opt-out request, not an objection, given Mr. Douglass' statement that he "will not be participating in this madness." *Id*. To the extent the letter is an objection, it is denied. Mr. Douglas does not object to any of the proposed settlement's terms. Mr. Douglass instead disagrees with the technical aspects of the allegations in this case, and expresses his view that class members are not entitled to any relief. *Id*. That objection does not suggest any unfairness to the class, and the Court finds none.

settlement is fair and reasonable.")

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, Plaintiff's motion for final approval of the class action settlement is **GRANTED**.

### c. Subtle Signs of Collusion

Although the Court need not apply any heightened standard because the parties reached a settlement after class certification, the Court considers whether there is evidence of collusion or other conflicts of interest. The complex legal and factual posture of this case, the amount of discovery completed, and the fact that the Settlement is the result of arm's-length negotiations between the Parties, including negotiations presided over by the Honorable James F. Holderman, a former Chief Judge of the Northern District of Illinois, support a finding that the Settlement was not tainted by collusion or conflicts of interest. The Court finds that these facts, in addition to the Court's observations throughout the litigation, reveal no evidence of collusion in the Settlement, implicit or otherwise. *See In re Bluetooth*, 654 F.3d at 947. This finding is also supported by, among other things, the fact that the Settlement provides substantial monetary benefits to Class Members and those benefits are not disproportionately low compared to the attorneys' fees and expenses sought by Class Counsel or the Plaintiffs.

### B. Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment

In its unopposed motion, Class Counsel asks the Court to approve an award of $3,025,000 in attorneys' fees and $47.517.37 in costs. Dkt. No. 161 at 1. Class Counsel also seeks a $7,500 incentive award for the Named Plaintiffs. *Id*.

#### i. Attorneys' Fees

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law claim—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino*

11

*v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506.

### b. Discussion

Class Counsel here seeks $3,025,000 in fees, or 25% of the settlement amount. *See* Dkt. No. 162 at 6. This is in line with the benchmark for a reasonable fee award under the percentage-of-recovery method. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942.

The Court has also considered Plaintiffs' motion for attorneys' fees under the lodestar method and finds the requested amounts fair and reasonable. In assessing the requested attorneys' fees, the Court has considered the relief achieved for the Settlement Class Members, the time and effort devoted by Class Counsel as demonstrated by their sworn declaration and the complexity of the legal and factual issues involved. As noted above, the Parties exchanged substantial fact and expert discovery, including producing over 6,000 pages of documents, responding to fifty-five (55) interrogatories and conducting full-day depositions of Mr. Dickey and Mr. Parmer on January 8, 2018, and January 16, 2018, respectively. *See* Dkt. No. 162-1 at ¶ 3; Dkt. No. 122.

The Court finds that the attorneys' fees and expenses awarded to Class Counsel identified above are fair and reasonable under both a common fund approach and a lodestar approach. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (recognizing 25% fee as the

accepted "benchmark" in common fund cases); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) (lodestar approach). In calculating its lodestar, Class Counsel contends that it collectively expended a combined total of 1,981 hours. Dkt. No. 162 at 10. The Court finds that, given the advanced posture of the case and the amount of substantive litigation activity, the 1,981 hours expended by Class Counsel were reasonable and necessary to the prosecution of this case. *See Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2019 WL 4164731, at *4 (N.D. Cal. July 22, 2019) (finding reasonable Class Counsel's expenditure of 5,585 hours in a three-year-old class action resulting in $16 million common fund settlement); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding reasonable Class Counsel's expenditure of 3,366 hours in a three-year-old class action resulting in $12 million common fund settlement).

With respect to hourly rates, the rates requested are $275-$575 for associates and $615-$1,000 for partners, leading to a combined lodestar of $982,159.10 and consequently a requested fee "multiplier" of 3.08. *Id*. The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class").

The lodestar multiplier also supports the reasonableness of the fee request and falls within the range of reasonableness. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (no abuse of discretion where district court awarded 28% fee with cross-check lodestar multiplier of 3.65); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *7 (N.D. Cal. Jan. 25, 2019) (benchmark award of 25% of settlement fund with lodestar multiplier of approximately 3.46 reasonable in light of length of case and procedural posture); *Lazarin v. Pro Unlimited, Inc.*, No.

13

C11-03609 HRL, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (lodestar multiplier of 3.36 reasonable and did not warrant a downward departure from 25% benchmark); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *1–2 (N.D. Cal. June 30, 2011) (approving $3,125,000 in fees, representing 25% of the settlement fund and a 4.3 multiplier, and collecting cases).

The Court finds that the above amounts are not a disproportionate cash distribution to Class Counsel in light of the $12.1 million settlement amount, and finds that the total benefits to the class justify the fees awarded. *See Roes*, 944 F.3d at 1056 ("the district court had an obligation to question the disproportionate cash distribution to attorneys' fees, substantively address concerns that the settlement value was inflated, and clearly explain why the total benefits to the class justified the fees awarded.") (internal citations and quotations omitted). The Court finds that Class Counsel's requested fees are reasonable and accordingly **GRANTS** Class Counsel's motion for attorneys' fees in the amount of $3,025,000.

### ii. Attorneys' Costs

Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel seeks reimbursement of $47,517.37 in out-of-pocket costs. *See* Dkt. No. 161-1 ¶36. Class Counsel submitted a table summarizing the costs and expenses incurred. Dkt. No. 63-1 Ex. A. These expenses include professional service fees (for experts and investigators), travel fees, and discovery-related fees. *Id*. The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $47,517.37.

### iii. Incentive Award

Class Counsel requests an incentive award of $7,500 for the Named Plaintiffs. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth

14

Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

Courts in this district have recognized a $5,000 incentive award as "presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"). In determining the reasonableness of a requested incentive award, some courts have considered, among other factors, the proportionality between the incentive award requested and the average class member's recovery. *See Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019); *Smith*, 2016 WL 362395, at *10.

Plaintiff requests a $7,500 service award for each Mr. Dickey and Mr. Palmer, at the high end of the range of awards granted in this District in comparable class actions. *See, e.g.*, *Fowler v. Wells Fargo Bank, N.A.*, 17-cv-02092-HSG, 2019 WL 330910, at *7 (N.D. Cal. Jan. 25, 2019) ($7,500 award in $30 million settlement); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F.Supp.3d 993 (N.D. Cal. 2015) ($2,500 award to each named plaintiff appropriate following $40 million settlement of consumers' class action against cellular telephone company); *see also Cox v. Clarus Marketing Group, LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) ($5,000 award in $2.65 million consumer class action settlement).

Considering all the circumstances of this case, the Court finds that a $7,500 service award is not warranted to compensate Plaintiffs. Mr. Dickey estimates that he devoted approximately 50 hours toward the prosecution of this case, and Mr. Parmer estimates that he devoted approximately 40 hours toward the prosecution of this case. The Court finds that a $5,000 incentive award for

each Named Plaintiff is reasonable.[3]

### III. CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**.

2. Plaintiff's Motion for Class Counsel's Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment is hereby **GRANTED IN PART AND DENIED IN PART.**

3. The Court approves the settlement amount of $12,100,000.00, including payment in the amount of $18,750.00 to the Labor Workforce Development Agency under the PAGA; settlement administrator costs in the amount of $10,000.00; attorneys' fees in the amount of $3,025,000; costs in the amount of $47,517.37; an incentive fee for the Named Plaintiffs in the amount of $5,000 each; and reimbursement of litigation costs to Plaintiff Dickey in the amount of $2,482.85 for computer damage.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a stipulated final judgment within 10 days from the date of this order. The proposed judgment need not repeat the findings in this Order. *Compare* Dkt. No. 162-4.

**IT IS SO ORDERED.**

Dated: 2/21/2020

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] Both Mr. Parmer and Mr. Dickey produced their computers to Defendant (for purposes of Defendant's expert's technical examination), and ultimately received back damaged machines that required replacement parts. *See* Dkt. No. 161-2 at ¶ 3; Dkt. No. 161-3 at ¶ 2(d). The Court will award as litigation costs the reimbursement (separate and apart from the incentive award) for the damage to Mr. Dickey's computer in the amount of $2,482.85. Dkt. No. 161-2 at ¶ 3.